JAMES KEITGES AND CHERYL KEITGES, HUSBAND AND WIFE,
APPELLANTS, V. DARRELL S. VANDERMEULEN, APPELLEE.

483 N.W.2d 137

Filed May 1, 1992.    No. S-89-445.

Barbara Thielen, of Taylor, Fabian, Thielen & Thielen, for appellants.

Terry K. Gutierrez, of Gast & Peters, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This action was brought by the plaintiffs, James and Cheryl Keitges, to recover damages for the destruction of trees, shrubs, and vegetation on their property when the defendant, Darrell S. VanDermeulen, attempted to clear a path for the construction of a fence. The defendant's property is adjacent to the plaintiffs' land.

In the first cause of action of the amended petition, the plaintiffs sought treble damages under Neb. Rev. Stat. § 25-2130 (Reissue 1989) for willful trespass. In the second cause of action the plaintiffs sought damages for negligent trespass. The jury found that the defendant's trespass was not willful and returned a verdict in the amount of $3,340. The plaintiffs have appealed from that judgment.

The plaintiffs' 13 assignments of error, when summarized, allege that the district court erred in (1) failing to allow them to present evidence relating to the cost of returning their property to its condition as it existed prior to the defendant's trespass, and improperly instructing the jury on the issue of damages; (2) admitting photographic evidence offered by the defendant which depicted the site of defendant's trespass; and (3) overruling their motion for a new trial.

The record shows that the plaintiffs' land is a rectangular 10.01-acre tract of unimproved land in Washington County, which property they purchased in 1981 with the intention of someday building a house there. The southern one-third of the lot is planted in bromegrass, and the northern two-thirds of the lot is heavily wooded. At the trial, no evidence was presented to show that any of the trees on the plaintiffs' land had been deliberately planted. The evidence which was presented tends to show that the woods on the plaintiffs' land was a growth of trees and vegetation indigenous to that area. As of the date of the trial, the plaintiffs had not yet constructed a house on the land, but were using the property for recreational purposes such as "nature hikes" with their children.

The defendant, who raises thoroughbred horses, is the owner of an 11.88-acre tract of land which adjoins the east line of the plaintiffs' property. In December 1984, the defendant decided to construct a fence along the line between his land and the

plaintiffs' land. He had previously asked the plaintiffs to share in the cost of such a fence, but the plaintiffs declined to do so.

After hiring a bulldozer operator, the defendant began to clear a path through the thick woods and vegetation which existed along the boundary between their land. The defendant directed the bulldozer operator to drive the bulldozer behind him and to his left as he walked from the north to the south ahead of the bulldozer along what he thought was the boundary between their property.

After the bulldozer had traveled at least 205 feet, clearing trees and shrubbery along the way, the defendant realized he had strayed 25 to 30 feet onto the plaintiffs' property. The defendant then instructed the bulldozer operator to leave the plaintiffs' property.

Apparently undaunted by his misdirection of the bulldozer, the defendant then used a chain saw in an attempt to clear a path for the proposed fence. Despite using an Army compass, the defendant again strayed onto the plaintiffs' property, cutting down all or portions of up to 30 additional trees.

Sometime later, the plaintiffs discovered the damage which defendant had done on their land. James Keitges testified that in the damaged area "all the trees had either been knocked down, were lying on their sides, or they were uprooted leaning over halfway with the roots exposed or there were trees that had been cut down and piled in big piles with the soil." The damage covered an area at least 450 feet long and 8 to 10 feet wide. Approximately 100 trees had been damaged or destroyed.

James Keitges then contacted an Earl May Garden Center in an effort to determine whether the damage could be repaired and, if so, at what cost. Nurseryman Carl Johnson examined the damage to the plaintiffs' property and determined that it would be possible to return the damaged area to substantially the same condition as it existed prior to defendant's trespass. Johnson prepared a detailed estimate of the cost of restoring the plaintiffs' property to its prior condition, specifically itemizing the replacement trees by size and cost, and including the cost of labor and materials for replanting. However, the trial court refused to allow Johnson to testify regarding the cost or feasibility of restoring the plaintiffs' land. Plaintiffs' offer of

proof indicated that if Johnson had been allowed to testify, he would have testified that in April 1985 the reasonable cost of such restoration was $12,219.07 and that price increases had raised that amount to $13,842.80 at the time of trial.

At the trial, James Keitges testified that in his opinion, the value of the 10.01-acre tract was approximately $55,000 immediately before the damage occurred and approximately $25,000 immediately after the damage occurred.

The defendant's expert witness, Russell Nelson, testified that he had appraised the plaintiffs' property and had estimated its fair market value at $21,500. Nelson testified that in his opinion, the destruction of the trees had no effect upon the market value of the plaintiffs' property, but he was unable to support this opinion with market data relating to properties which had suffered similar damage.

The plaintiffs requested their expert witness Richard See to determine the amount of any loss in value occurring to their property as a result of the damage done by the defendant. See testified that such a determination is usually made by conducting a "before and after analysis." In attempting to conduct this analysis using a sales comparison approach, he found no properties that had suffered a similar loss and was unable to measure the market reaction to the destruction of trees using this approach. See testified that by using the "cost approach," he was able to obtain sufficient data to reach an opinion concerning the loss in value to the plaintiffs' property which resulted from the damage to the trees. However, the trial court did not allow See to testify as to that opinion. The plaintiffs' offer of proof indicated that See would have testified that using the cost approach, he would rely on a contractor's estimate and, in this case, the Earl May estimate prepared by Johnson.

The plaintiffs first contend that the trial court erred in not allowing them to present evidence relating to the cost of restoring trees and vegetation which the defendant damaged or destroyed and in improperly instructing the jury on the issue of damages. As noted previously, the district court refused to allow the plaintiffs to introduce evidence of prospective restoration costs. The district court also refused the plaintiffs'

proposed jury instruction which would have instructed the jury that the plaintiffs were "entitled to recover the reasonable cost of repairing the (property) to substantially the same condition it was in before it was damaged." Instead, the trial court instructed the jury with respect to the issue of damages as follows:

> The Defendant has admitted and the Court has determined as a matter of law, that the Defendant trespassed upon the land of the Plaintiff. The Court has also determined that the Plaintiff sustained damages as a result of that trespass. Therefore, you must decide how much money it will take to fairly and adequately compensate the Plaintiff for that damage. *In arriving at that amount of money you may consider the market value of the property before it was damaged and the market value of the property after the damage.*

(Emphasis supplied.) Although the trial court instructed the jury that it could "consider" the diminution in value of the property in determining the damages, it did not specifically instruct the jury as to the measure of damages. During a conference with counsel for the parties outside the presence of the jury, the trial court explained the reason for not permitting testimony relating to the feasibility or estimated cost of restoring the plaintiffs' land to its prior condition, and also the reason for giving the quoted instruction. The trial court stated that

> under the facts of this case to allow the jury to determine whether or not the property could be restored to its original condition would have been extremely prejudicial because of the nature of the area damaged, the fact that the evidence revealed that it was random growth, the trees were not of an ornamental type. There was no evidence that they were crop-type, cash-type trees and so, therefore, the instructions as given, I found none that fit the situation completely.
>
> The old NJI instruction as to damage to property did not work; the new NJI instruction — proposed instructions, in my opinion, do not work and so I found that they do not apply in the case and that is the reason for

the modification and my reason for giving that type of damage instruction.

The trial court may have been referring to NJI2d 4.20 through 4.30.

Apparently, the district court found that because the trees which the defendant had destroyed were not "ornamental" and were not harvested as timber, the plaintiffs could recover only the diminution in value of their land which the defendant had caused by his trespass. The court then determined that because the plaintiffs were limited to the diminution in the value of their land, evidence as to the potential feasibility and cost of restoring the property was irrelevant and prejudicial.

Thus, the question presented is whether a plaintiff is entitled to recover the cost of restoring trees and vegetation on land which he holds for residential or recreational purposes when a portion of a natural woods is destroyed. The issue appears to be one of first impression in Nebraska.

Other jurisdictions have fashioned various rules to deal with similar questions. See, generally, Annot., 95 A.L.R.3d 508 (1979). While some courts in other states have awarded restoration costs, a distinction has sometimes been made with respect to the types of trees which have been damaged. For example, in *The Rector Etc. of St. Christopher's v. C. S. McCrossan, Inc.*, 306 Minn. 143, 235 N.W.2d 609 (1975), the Supreme Court of Minnesota departed from its prior rule that the damages for destruction of trees and shrubbery is the diminution in the value of the land, and held that "where trees and shrubbery have aesthetic value to the owner as ornamental and shade trees or for purposes of screening sound and providing privacy, replacement cost may be considered to the extent that the cost is reasonable and practical." *Id.* at 146, 235 N.W.2d at 611. However, in a companion case decided the same day as *Rector*, the same court found the diminution in value of the land to be the proper measure of damages where destroyed trees were "for the most part, quite small, ill-formed, and not particularly desirable as shade trees or ornamental trees but did serve to prevent erosion and act as a sound barrier." *Baillon v. Carl Bolander & Sons Co.*, 306 Minn. 155, 157, 235 N.W.2d 613, 615 (1975). In the *Baillon* case the court stated, "To adopt

the replacement rule would here conceivably involve an expense greatly out of proportion to the actual damage to the real estate." *Id.*

Similarly, in *Kebschull v. Nott*, 220 Mont. 64, 714 P.2d 993 (1986), the Supreme Court of Montana found that the proper measure of damages for injury by fire to approximately 5.8 acres of natural, unimproved land consisting mainly of underbrush and noncommercial trees was the difference between the market value of the property before and after the fire. The court noted that in ascertaining the proper measure of damages, "a determining factor is whether the destroyed trees have any value apart from the land where they stood." 714 P.2d at 995.

Likewise, in *Kapcsos v. Hammond*, 13 Ohio App. 3d 140, 468 N.E.2d 325 (1983), the Court of Appeals of Ohio found the proper measure of damages to be "the difference between the fair market value of the property prior to the trespass and the fair market value of the property after the trespass," *id.* at 142, 468 N.W.2d at 327, where the trees in question were "a woodland mix and were not particularly unique to the parcel," and where no evidence was presented that the trees were "in any way ornamental or rare," *id.* at 141, 468 N.W.2d at 327. However, in *Denoyer v. Lamb*, 22 Ohio App. 3d 136, 490 N.E.2d 615 (1984), a different three-judge panel of that court later held the following with respect to a woods characterized as a mature climax forest:

> [I]n an action for compensatory damages for cutting, destroying and damaging trees and other growth, and for related damage to the land, when the owner intends to use the property for a residence or for recreation or for both, according to his personal tastes and wishes, the owner is not limited to the diminution in value (difference in value of the whole property before and after the damage) or to the stumpage or other commercial value of the timber. He may recover as damages the costs of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of regeneration within

a reasonable period of time. [Citations omitted.]

*Id*. at 138, 490 N.E.2d at 618. In explaining its holding in *Denoyer*, the court also stated:

The cardinal rule of the law of damages is that the injured party shall be fully compensated. [Citation omitted.] If an owner is to be fully compensated for temporary (reparable) damage to his property, then what he expects from the use of it is a vital factor.

"* * * The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale.* * * " *Gilman v. Brown* (1902), 115 Wisc. 1, 8, 91 N.W. 227, 229.

. . . Shade and ornamental trees used for a specific, identifiable purpose are compensable. Annotation (1979), 95 A.L.R. 3d 508. Recovery, however, has not been limited to trees used for "specific uses." It has been awarded when the owner's personal use is neither specific nor measurable by commercial standards, and when the trees form a part of an ecological system of personal value to the owner. *Heninger v. Dunn*, [101 Cal. App. 3d 858, 162 Cal. Rptr. 104 (1980)] (two hundred twenty-five trees and vegetative undergrowth destroyed in remote mountain land to make a new road that actually enhanced the value of the land as a whole); *Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E. 2d 91 (rough and hilly land accessible only by horse or four-wheel-drive vehicle) . . . *Morris v. Ciborowski* (1973), 113 N.H. 563, 311 A. 2d 296 (personal residential and recreational use); *Huber v. Serpico* (1962), 71 N.J. Super. 329, 339-340, 176 A. 2d 805, 810 (fifty trees cut in a "rear triangular protrusion" from the main residential lot); *Thatcher v. Lane Constr. Co.*, [21 Ohio App. 2d 41, 254 N.E.2d 703 (1970)] (trees on the rear of a residential lot). A nurseryman's testimony about the "purchase value" of comparable trees and shrubs, including planting, has been allowed. *Tatum v. R & R Cable, Inc.* (1981), 30 Wash.

App. 580, 583, 636 P.2d 508, 511.

*Denoyer v. Lamb,* 22 Ohio App. 3d at 139-40, 490 N.E.2d 619-20.

In addition to the cases discussed in *Denoyer,* some examples of other instances where restoration costs have been allowed include *Gross v. Jackson Tp.,* 328 Pa. Super. 226, 476 A.2d 974 (1984) (damage to hedges and shrubs sustained when township widened road); *Bangert v. Osceola County,* 456 N.W.2d 183, 190 (Iowa 1990) (trees maintained for "sentimental and historic reasons, for shade and windbreaks, as well as for environmental, wildlife and special landmark purposes"); and *Revels v. Knighton,* 305 Ark. 109, 805 S.W.2d 649 (1991) (replacement cost and treble damages awarded for destruction of six to eight shade trees). Other jurisdictions have also allowed compensation for the aesthetic value of destroyed trees. See, e.g., *Kroulik v. Knuppel,* 634 P.2d 1027 (Colo. App. 1981).

A number of courts have cited with approval the Restatement (Second) of Torts § 929 (1979) in deciding that injured parties may be entitled to recover the cost of replacing damaged trees. That section of the Restatement reads in part:

> (1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
>
> (a) the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred . . . .*

(Emphasis supplied.) The Restatement, *supra* at 544.

The rule set forth in the Restatement is consistent with this court's decision in *"L" Investments, Ltd. v. Lynch,* 212 Neb. 319, 327, 322 N.W.2d 651, 656 (1982), quoting *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10 (Iowa 1975), wherein this court stated:

> "[T]he principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the

injury actually sustained . . . .

. . . .

"Where the injury is such that the premises may be restored to as good condition as it was before, the measure of recovery is the fair and reasonable cost and expense of such restoration."

While the *Lynch* case involved damage to a building, this court has employed similar reasoning with respect to unimproved land. In *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988), a political subdivision's action caused the flow of surface water off the plaintiff's land to be impeded, which, in turn, resulted in expenses for crop replanting and treatment of the land to eliminate the chemical problems and salt caused by the ponding of water. In determining the proper measure of damages, this court stated: "It is our belief, and we so hold, that where the land damaged can be returned to its prior condition by treatment, grading, or otherwise, the damage is temporary and the landowner is entitled to such expenses as part of his or her damages." *Id.* at 697-98, 424 N.W.2d at 121.

In the present case, the defendant argues that because the trees which he damaged could be characterized as "random growth" indigenous to the area rather than "ornamental or rare" trees, the plaintiffs' damages must be limited to the diminution in the market value of the land. However, we believe that is an artificial distinction. One person's unsightly jungle may be another person's enchanted forest; certainly the owner of such land should be allowed to enjoy it free from a trespasser's bulldozer. Indeed, a trespasser should not be allowed, with impunity, to negligently or willfully wreak havoc on a landowner's natural woods, and the landowner's attempted recovery for such injury should not be entirely frustrated by the fact that the market does not reflect his personal loss.

Thus, we hold that in an action for compensatory damages for cutting, destroying, and damaging trees and other growth, and for related damage to the land, when the owner of land intends to use the property for residential or recreational purposes according to his personal tastes and wishes, the owner

is not limited to the difference in value of the property before and after the damage or to the stumpage or other commercial value of the timber. Instead, he may recover as damages the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible. However, the award for such damage may not exceed the market value of the property immediately preceding the damage. See *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982). If improvements have been constructed on the damaged realty, recovery for restoration of damaged trees and vegetation should be limited to an amount not exceeding the market value of the land as if it were unimproved.

Furthermore, under this rule, when there is no factual question but that the plaintiffs' intended use of the property is for residential or recreational purposes and the plaintiff seeks only to recover the cost of restoring his property, evidence relating to the land's diminution in value has no relevance, although evidence of the property's value immediately before the damage is relevant.

The record before us shows that there is no question in this case but that the plaintiffs held their land for residential and recreational use. They purchased the land in 1981 with the intention of building a house on the property, and although no construction had begun at the time of the trial, the testimony of James Keitges shows that the plaintiffs still intend to construct a house after they have completely paid for the land. The record also shows that James Keitges has a degree in biological science and that he and his family use their 10-acre lot as a family retreat for "nature hikes" and "nature study." Thus, we believe that the plaintiffs are entitled to recover the cost of replacing trees and vegetation damaged or destroyed by the defendant, and they must be allowed to present evidence of the feasibility and cost of such restoration.

Although our decision here eliminates the need to consider the plaintiffs' third summarized assignment of error and that portion of the plaintiffs' second summarized assignment of error which relates to the measure of damages, we consider that part of the plaintiffs' second assignment of error which involves an issue likely to arise during a retrial of this case.

The defendant offered 18 photographs of the damaged area which were taken 4 years after his trespass, admitting that they did not fairly and accurately represent the damage as it appeared at the time it occurred in 1984. Defendant offered these photographs to show the types of trees which were present in the area which was damaged. The plaintiffs objected to the introduction of the photographs, arguing that any probative value the photographs may have had was outweighed by the prejudice that would result from their submission to the jury. See Neb. Rev. Stat. § 27-403 (Reissue 1989).

In their brief, the plaintiffs argue that the submission of the photographs to the jury was unduly prejudicial because the defendant's foundational testimony regarding the photographs described the pictures as depicting the "damaged area," "the path of the bulldozer" and "regrowth." Brief for appellants at 21. However, the trial court properly cautioned the jury

> to remember the testimony of the witnesses. [The photographs] were taken four years after the incident in question and they are not to be used by you in considering what the damage was in December of 1984, after the incidents in question. They are merely being received to show you the type of trees involved in there.

It is difficult to understand the need for all 18 photographs, many of which are largely duplicative of each other, to show the types of trees which grew in the area damaged by the defendant. However, the plaintiffs do not object to the cumulative nature of this evidence. Given the trial court's admonition that the photographs were offered only to show the types of trees damaged, we cannot say that the trial court abused its discretion in admitting such evidence. See State v. Messersmith, 238 Neb. 924, 473 N.W.2d 83 (1991).

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.