or corrective opportunities provided by the employer or to avoid harm otherwise.[3]

Consequently, because the Court finds that defendant has successfully proved, by a preponderance of the evidence, the affirmative defense to liability, the Court will enter judgment in favor of the defendant.

Accordingly,

**IT IS HEREBY ORDERED** that judgment shall be entered in favor of defendant Taco Bell, Corp. and against plaintiff Rita Phillips. An appropriate Order shall accompany this Memorandum and Order.

**Von R. TRIMBLE, Jr.,
et al., Plaintiffs,**

v.

**ASARCO INCORPORATED, a New
Jersey Corporation, Defendant.**

**No. 8:97CV428.**

United States District Court,
D. Nebraska.

May 20, 1999.

---

**3.** The Court hereby expressly limits its findings under the second prong of the affirmative defense to the facts of this case. A delay of three months and seven days between the first incident of harassment and a plaintiff's first complaint of harassment certainly may not alone prove that the plaintiff employee unreasonably failed to take advantage of any protective or corrective opportunities provided by the employer or to avoid harm otherwise.

Robert S. Lannin, Richard W. DeWitt, Croker, Huck Law Firm, Omaha, NE, Phillip S. Lorenzo, Michael G. Martin, Demetri E. Munn, Baker, Hostetler Law Firm, Denver, CO, David D. Hoff, Loren D. Dunn, Lucy L. Helm, Janissa A. Strabuk, Trilby C.E. Dorn, Daniel J. Gunter, Graham, James Law Firm, Seattle, WA, for plaintiffs.

Stephen M. Bruckner, Fraser, Stryker Law Firm, Omaha, NE, Steven E. Guenzel, Barlow, Johnson Law Firm, Lincoln, NE, Peter J. Nickles, Steven J. Rosenbaum, Richard A. Meserve, Elliott Schulder, James A. Goold, Thomas L. Cubbage, III, Anthony S. Yoo, Covington, Burling Law Firm, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is filing no. 135, the "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction" filed by the defendant, ASARCO Incorporated ("ASARCO"). In response to a previous motion by ASARCO to dismiss this action for lack of subject matter jurisdiction (filing no. 62), the court in filing no. 131, sustained ASARCO's motion to dismiss, but granted the plaintiffs leave to file a Third Amended Complaint. The plaintiffs, Von R. Trimble, et al., filed a "Third Amended Complaint Class Action" (filing no. 133). In filing no. 135, ASARCO asserts again that the court lacks subject matter jurisdiction of this action and alleges that the Third Amended Complaint does not cure the jurisdictional deficiencies of the Second Amended Complaint (filing no. 31).

In deciding filing no. 135, the court has reviewed matters outside the pleadings. See, e.g., *Godfrey v. Pulitzer Publishing Co.*, 161 F.3d 1137, 1140 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999); *Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3 (8th Cir.1998); *Osborn v. United States,* 918 F.2d 724, 728–731 (8th Cir.1990). A district court may consider matters outside the pleadings on a motion challenging subject matter jurisdiction. *Deuser,* 139 F.3d at 1191 n. 3; *Osborn,* 918 F.2d at 728 n. 4. When the court does consider matters outside the pleadings, "[t]he court's election to do so does not convert the 12(b)(1) motion to dismiss into a motion for summary judgment." *Deuser,* 139 F.3d at 1191 n. 3. Accord *Western Neb. Resources Council v. Wyoming Fuel Co.,* 641 F.Supp. 128, 132, 139–140 (D.Neb.1986), cited in *Osborn,* 918 F.2d at 728 n. 5.

Instead of a purely "facial attack," which challenges the facial sufficiency of the complaint, a party may, as in this action, mount a "factual attack" on subject matter jurisdiction, that is, looking beyond the pleadings and addressing the factual

basis for jurisdiction. *Osborn*, 918 F.2d at 729 n. 6. In that event, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at 730. The district court has the power to decide issues of disputed fact when resolving a factual attack on subject matter jurisdiction. *Godfrey*, 161 F.3d at 1140.[1] On appeal, if the district court determined disputed factual issues, the clearly erroneous standard of review applies to the district court's findings of jurisdictional fact. *Osborn*, 918 F.2d at 730.

In this action, the Third Amended Complaint asserts a private cause of action by a proposed class of real estate owners and tenants for recovery of "response costs" pursuant to 42 U.S.C. § 9607(a), which is section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq. The plaintiffs also assert tort claims under state law based on the alleged deposit by ASARCO of airborne contaminants on the plaintiffs' owned or rented real estate.

More specifically, the Third Amended Complaint (filing no. 133) alleges that the named class representatives first became aware in 1997 that ASARCO, through years of operation, has contaminated the plaintiffs' property. In Paragraph 25 of filing no. 133, the named plaintiffs claim to represent classes and subclasses with a total membership in excess of 67,700 members. The Third Amended Complaint states that by depositing airborne contaminants on properties of the class members, ASARCO became liable for trespass, nuisance, negligence, strict liability, unjust en-

richment, medical monitoring and CERCLA response costs. The plaintiffs also seek a declaratory judgment establishing ASARCO's liability for all future CERCLA costs incurred in remediation of the plaintiffs' properties.

ASARCO contends that subject matter jurisdiction of this action cannot be predicated on 28 U.S.C. § 1331 (federal question) because the plaintiffs have failed to allege essential elements of a private cause of action under CERCLA. In addition, ASARCO challenges the plaintiffs' allegation that jurisdiction can be based on 28 U.S.C. § 1332 (diversity of citizenship) for a subclass of 15,000 "owner-occupants." ASARCO disputes jurisdiction under 28 U.S.C. § 1332(a) because the claims of the individual "owner-occupants" do not meet the threshold $75,000 jurisdictional amount.

## FEDERAL QUESTION JURISDICTION

■ 42 U.S.C. § 9607(a)(4)(B) of CERCLA provides a private cause of action for the recovery from responsible parties of "necessary costs of response incurred ... consistent with the national contingency plan." See generally *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999): "The purpose of CERCLA is 'to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes.' ... In order to establish a prima facie case of CERCLA liability against [the defendant], [the plaintiff] must establish that: (1) there was a release or threatened release of a hazardous substance; (2) the site of the release or threatened release is a 'facility' as that term is defined the statute; (3)

---

1. The plaintiffs urge that "[g]enerally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Larkin v. Brown*, 41 F.3d 387, 388

(8th Cir.1994). Nevertheless, in the context of a factual attack on subject matter jurisdiction, that standard does not preclude the court from deciding, by the preponderance of the evidence, disputed issues of fact bearing on jurisdictional amount. See *Osborn*, 918 F.2d at 728.

the release or threatened release has caused [the plaintiff] to incur response costs; and (4) [the defendant] is among a statutorily-defined group of persons, which includes the owner or operator of a facility.... 42 U.S.C. § 9607(a)."

■ In addition, CERCLA places the burden on a nongovernmental plaintiff to prove that the claimed response costs conform to the National Contingency Plan established under CERCLA and administered by the Environmental Protection Agency. See, e.g., *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992); *Public Service Co. of Colorado v. Gates Rubber Co.,* 22 F.Supp.2d 1180, 1187 (D.Colo.1997).

ASARCO denies that the plaintiffs can establish the third of the foregoing elements, namely, that the plaintiffs have incurred response costs consistent with the National Contingency Plan. If the plaintiffs have not incurred such costs, their CERCLA claim is not ripe and should be dismissed. See, e.g., *Lewis v. General Electric Co.,* 37 F.Supp.2d 55, 62 (D.Mass. 1999):

> CERCLA enables a private party who has investigated or remediated a hazardous waste site "consistent with the national contingency plan" to recover response costs. 42 U.S.C. § 9607(a)(4)(B).
>
> To recover costs under this provision, however, **a plaintiff must have actually incurred response costs**....
>
> In this case, plaintiff concedes that she has not incurred such costs.... **Plaintiff's claim is therefore premature and fails to state a claim for which relief can be granted at this time. Accordingly, Count VIII will be dismissed without prejudice. If, at a later date, plaintiff does incur response costs, she will be free to reassert this claim.**

(Emphasis added.)

■ It is clear from the record that the plaintiffs in this action, both the putative class members and the class representatives, have not personally spent any money whatsoever for investigation or remediation.[2] Instead, attorneys who previously prevailed in other litigation against ASARCO commissioned, at their own expense, "a brief sampling" of soil near the Omaha ASARCO site in 1997. See "Affidavit of Robert S. Lannin" (*"Lannin Affidavit"*) (filing no. 141) at ¶ 3; "Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction" (*"Plaintiffs' Opposition"*) at 10. Thereafter, the attorneys, again entirely at their own expense, hired AGI Technologies to conduct initial and follow-up studies resulting, by the date of the Third Amended Complaint, in an expenditure by the attorneys of $168,000. "Affidavit of Raymond M. Sadowski" (*"Sadowski Affidavit"*) (filing no. 142) at ¶¶ 10–14; *Lannin Affidavit* at ¶ 4; *Plaintiffs' Opposition* at 10, 12, 23–25.

Upon receipt of the initial evidence of contamination, the attorneys approached the individuals who are now the proposed class representatives in this action, informed those individuals that their property had been contaminated by ASARCO, and asked whether the individuals would like to initiate, or participate in, a lawsuit against ASARCO. Thus, the representatives signed on to the prospective lawsuit against ASARCO without ever spending any funds to investigate or clean up the contamination. See Exhibits 1, 2, 3, 4 and 5 to Index of Evidence (filing no. 136); Exhibits C, D and E to Declaration of Thomas L. Cubbage III (filing no. 146).

The plaintiffs argue that they are liable for the costs expended by the attorneys because the named class representatives signed fee agreements with counsel which provide for reimbursement of the amounts the attorneys have spent for investigation and other services. *Lannin Affidavit* at ¶ 15; *Plaintiffs' Opposition* at 23–27. However, reimbursement is categorically

---

**2.** See, e.g., Exhibits 1, 2, 3, 4 and 5 to Index of Evidence (filing no. 136) and Exhibits C, D and E to Declaration of Thomas L. Cubbage III (filing no. 146).

conditional, namely, the plaintiffs' attorneys would be reimbursed by the plaintiffs only if the plaintiffs prevail against ASARCO in this action and only out of funds recovered from ASARCO. *Id.* Otherwise, the class representatives have no liability for the costs expended. In addition, the fee agreements apply only to the class representatives and not to any of the other alleged 67,700 class members. In short, the only persons who have "incurred" "response costs" are the plaintiffs' lawyers.

■ ASARCO has previously argued successfully in this case that section 107(a) of CERCLA creates a restitutionary remedy, not a private federal cause of action for damages, and, thus, the plaintiffs must actually spend some money on the cleanup or investigation of the contamination before they may seek reimbursement for their "response costs."[3] Although expressed in a different context, the court agrees with the following statements from *In re Dant & Russell, Inc.,* 951 F.2d 246 (9th Cir.1991):

> Under CERCLA's scheme for private action, response costs may not be recovered when there has been no commitment of resources for meeting these costs. **Section 9607(a)(4)(B) permits an action for response costs "incurred"—not "to be incurred."** Moreover, CERCLA expressly provides for declaratory actions for determining liability as to future response costs. Section 9613(g)(2) provides that in actions under § 9607, "the court shall enter a declaratory judgment on liability for response costs ... that will be binding on any subsequent action or actions to recover further response costs...."

> **These sections envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a dec**laration that the responsible party will have continuing liability for the cost of finishing the job.

This system strikes a balance between a number of considerations. **By requiring a plaintiff to take some positive action before coming to court, CERCLA ensures that the dispute will be ripe for judicial review**.... On the other hand, by not requiring plaintiffs to perform full cleanup before coming to court, and by expressly providing for declaratory judgments, CERCLA substantially reduces the risk involved in performing the cleanup.

*Id.* at 249–250 (emphasis added).

■ The court finds and concludes that allowing the above-designated action to proceed, with no expenditure of the plaintiffs' funds and no commencement of any cleanup, as an action wholly funded by attorneys, until, if successful, the plaintiffs' attorneys obtain a declaratory judgment rendering ASARCO liable for future costs of remediation, would circumvent two important principles of CERCLA private litigation. First, the plaintiffs could not directly obtain injunctive relief requiring ASARCO to clean up the plaintiffs' properties, because CERCLA provides private plaintiffs with no cause of action for injunctive relief to compel a defendant to undertake remediation. See, e.g., *State of Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1493 (10th Cir.1990) (injunctions requiring responsible parties to remove hazardous waste are not available to private plaintiffs under CERCLA); *Cadillac Fairview/California, Inc. v. Dow Chem. Co.,* 840 F.2d 691, 697 (9th Cir.1988) (section 9607 of CERCLA does not confer a private right of action for injunctive relief). Accord *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1049 (2d Cir.198); *Mayor and Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1046–1047 (D.N.J.1993) and cases cited therein.

---

**3.** E.g., in filing no. 131, which is incorporated herein by reference, the court agreed with *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1532–33 (10th Cir.1992), that expenses related to medical monitoring of persons exposed to contaminants are not "response costs" within the meaning of CERCLA.

■ Second, general litigation expenses and damages arising from the exposure of people and property to contamination may not be recovered under CERCLA. See, e.g., *Holloway v. Gaylord Chemical*, 922 F.Supp. 1154, 1158 (E.D.La. 1996) ( [CERCLA] does not cover compensation to private parties for bodily and economic injury traditionally within the reach of state tort law, economic losses, such as claims for the diminished value of property located near toxic waste sites, pain and suffering, emotional distress, and other related remedies). See also *Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 1965–1968, 128 L.Ed.2d 797 (1994) (private parties may not recover attorneys' fees incurred in CERCLA litigation or arising from negotiations with the Environmental Protection Agency; but attorney's fees for the work of identifying potentially responsible parties may be recovered, because that work benefited the entire cleanup effort, not just the interests of the private party). Moreover, "[s]tudies that Key Tronic's counsel prepared or supervised during those negotiations [with the EPA] may indeed have aided the EPA and may also have affected the ultimate scope and form of the cleanup. We nevertheless view such work as primarily protecting Key Tronic's interests as a defendant in the proceedings that established the extent of its liability. As such, these services do not constitute 'necessary costs of response' and are not recoverable under CERCLA." *Id.* at 1968. Accord *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 933, 937 (8th Cir.1995).

Because CERCLA does not cover general litigation expenses and damages, "**actual cleanup is encouraged by requiring plaintiffs to incur response costs before they can recover them.**" *In re Dant & Russell, Inc.*, 951 F.2d at 250 (emphasis added). "Since CERCLA places no strings on the award of response costs, allowing recovery for future costs absent any binding commitment to incur these costs would leave no incentive to complete the cleanup." *Id.*

In the court's view, whether the plaintiffs have "incurred" "necessary costs of response" within the meaning of 42 U.S.C. § 9607(a)(4)(B) of CERCLA, presents a mixed question of fact and law. The court finds and concludes that the plaintiffs have "incurred" no liability and no costs; that the plaintiffs have, therefore, failed to allege an essential element of a private cause of action under CERCLA; and that subject matter jurisdiction of this action cannot be predicated on 28 U.S.C. § 1331.

## DIVERSITY JURISDICTION

■ In filing no. 131, the court concluded that when subject matter jurisdiction is asserted pursuant to 28 U.S.C. § 1332, each member of a plaintiff class in a diversity-based class action must meet the jurisdictional amount in controversy required by 28 U.S.C. § 1332. See *Leonhardt v. Western Sugar Co.*, 160 F.3d 631 (10th Cir.1998). ASARCO contends that the plaintiffs' proposed subclass of 15,000 "owner-occupants" cannot realistically claim damages, that is, "lifestyle damages" plus either diminution in property values or costs of remediation, totaling $75,000 per class member.

■ In the "Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction," the plaintiffs rely on their expert's prediction that "in order to fully remediate the Owner–Occupants' properties to their condition before ASARCO's contamination, each class member will incur costs, on average, of at least $40,000." *Plaintiffs' Opposition* at 47. ASARCO counters that the market value of property to be remediated establishes a ceiling on the recoverable cost of remediation, and the median market value of the properties in question is well below $40,000.[4] See, e.g., *Keitges v. VanDermeulen,*

4. See, e.g., Exhibits 8 and 9 to Index of Evidence (filing no. 136). See also Exhibit 7 to filing no. 136, the "Declaration of Donald R.

Robbins" (typical cost range to remediate is $15,000 to $30,000 per residence; average

240 Neb. 580, 483 N.W.2d 137, 143 (1992): A property owner "may recover as damages the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible. **However, the award for such damage may not exceed the market value of the property immediately preceding the damage.**" Accord *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982):

> [W]e believe the award for such damage [negligent damage to real property] should not exceed the market value of the property immediately preceding the damage to the property.... [O]ne ought not to be able to recover a greater amount for partial destruction than one could recover for total destruction. To the extent that our previous decisions on this matter ... are to the contrary, they are overruled. If, in fact, the cost of repair or restoration exceeds the market value of the property just before the injury, then the proper measure of damages is the market value of the property just before the damages were incurred, less any salvage.

*Id.* at 656.

The plaintiffs contend that the foregoing language in *Keitges* and *"L" Investments* is merely dicta and may be disregarded. *Plaintiffs' Opposition* at 49. The court does not agree. However, if the language is dicta, a federal court, when addressing a legal issue of state law in a diversity case, must ascertain what the highest state court would declare state law to be if the case were before it. *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir.1998); *Guillard v. Niagara Machine & Tool Works*, 488 F.2d 20, 24 (8th Cir.1973). This court believes, and, therefore, predicts that the Nebraska Supreme Court, if faced with the issue today, would adopt the rule set forth in *Keitges* and *"L" Investments*, limiting the recoverable costs of restoration or remediation to the market value of the property.

In addition, the plaintiffs contend that the "owner-occupants" have claims for the invasion of their interests in the private use and enjoyment of their properties, as well as damages for the discomfort, inconvenience and annoyance they will suffer during the estimated eleven to fourteen years of remediation of the class area. *Plaintiffs' Opposition* at 56–58. ASARCO correctly points out, however, that five of those years, at the plaintiffs' own estimate (*Plaintiffs' Opposition* at 58), will be limited to planning only, and that the plaintiff's own expert estimates that remediation of an individual class member's property would take less than one week. See filing no. 142, *Sadowski Affidavit* at ¶¶ 29–31.

Finally, the plaintiffs contend that they are entitled to damages for the costs of future medical monitoring. However, the parties differ, and the courts which have considered the issue are split, regarding whether an award of future medical monitoring costs should be considered an award of money damages or a form of equitable relief.

At any rate, while such a claim, remedy, or item of response costs may be available under CERCLA, the court has determined herein that the plaintiffs' CERCLA claim must be dismissed. Regarding the causes of action asserted under Nebraska law, the plaintiffs have cited no authority, and the court has found none, which would suggest that Nebraska law recognizes either a cause of action for medical monitoring or a remedy involving the creation of a medical monitoring fund. There exists no pending or prospective legislation to authorize a cause of action or a remedy for medical monitoring, and the court finds it improbable that the Nebraska courts would judicially fashion such a right or remedy. Consequently, in the absence of authority that Nebraska law recognizes a claim or remedy for the costs of future medical monitoring, the court declines to speculate that the allegations of the Third Amended

---

cost is $24,000). The court finds Exhibit 7 more persuasive than the *Sadowski Affidavit*

where the two differ regarding costs to remediate.

Complaint seeking the creation of a medical monitoring fund furnish the jurisdictional amount otherwise absent in this action.[5]

THEREFORE, IT IS ORDERED:

(1) That filing no. 135, the "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction" filed by the defendant, ASARCO Incorporated, is granted; and

(2) That pursuant to Fed.R.Civ.P. 58, a separate Judgment has been entered on this date in accordance with this Memorandum and Order.

---

**5.** In addition, the "Declaration of Donald R. Robbins" (Exhibit 7 to filing no. 136) indicates that the cost per class member for medical monitoring in such programs funded by ASARCO in other jurisdictions is less than $200 per year. As previously stated (filing no. 131), each class member of a diversity-based class action must meet the jurisdictional amount in controversy required by 28 U.S.C. § 1332.