SPICER RANCH, A NEBRASKA PARTNERSHIP, APPELLANT, V. LARRY SCHILKE, AN INDIVIDUAL DOING BUSINESS AS MID COUNTY FARMS, AN UNINCORPORATED ENTITY, APPELLEE.

734 N.W.2d 314

Filed May 29, 2007.    No. A-05-992.

V. Gene Summerlin and Marnie A. Jensen, of Ogborn, Summerlin & Ogborn, P.C., for appellant.

Jeffrey H. Jacobsen and Justin R. Herrmann, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellee.

Sievers and Cassel, Judges, and Hannon, Judge, Retired.

Sievers, Judge.

Spicer Ranch, a partnership, appeals from the decision of the district court for Chase County which granted summary judgment in Spicer Ranch's favor regarding its negligence claim against Larry Schilke, but granted summary judgment in Schilke's favor on the damages issue. While this appeal involves the proper measure of damages for trees which burned as a result of Schilke's admitted negligence, we ultimately decide that summary judgment on the damages issue was improper, because material issues of fact exist which as a matter of law prevent summary judgment as to damages, and that the trial judge committed plain error in deciding the damage issue.

## FACTUAL AND PROCEDURAL BACKGROUND

We start by setting out the lay of the land, so to speak. There is a 4,040-acre piece of property in Chase County which is owned by the Spicer Family Children's Trust, started by David Spicer's father. David and his wife own an additional 667 acres of land, which is contiguous to the 4,040 acres. Spicer Ranch is a partnership of which David is the manager and operator. Spicer Ranch leases the 4,040 acres from the Spicer Family Children's Trust.

In 1999, Schilke, doing business as Mid County Farms, cash-rented a cornfield from David that was part of the 4,040 acres described above. The lease included certain real estate and irrigation equipment located in Chase County. On July 5, an aboveground powerline was placed on such leased property to provide electrical power to the irrigation pivot on the leased property. On November 3, while harvesting corn on the leased

property, Schilke's son, as Schilke's agent or employee, cut the powerline with a combine, resulting in a fire on Schilke's leased property which spread to Spicer Ranch's adjacent property. The fire caused damage to the crops, pasture, fences, and windbreak located on the adjacent Spicer Ranch property. The windbreak encompassed approximately 3 acres, and it had been planted by David and watered with an irrigation system.

On November 2, 2000, Spicer Ranch filed a petition alleging that as a result of the facts set forth above, Schilke was negligent and owed damages to Spicer Ranch. Damages were alleged to be as follows: (1) repair of fire damage to the windbreak at a cost of at least $520,000, (2) loss of use of areas damaged by fire, (3) lost profits and increased cattle deaths due to the absence of the windbreak, and (4) reduction in the market value of the adjacent Spicer Ranch property. In Schilke's answer, he denied the negligence claim.

On June 3, 2005, Schilke filed a motion for partial summary judgment on the issue of damages. Schilke alleged that there is no issue of material fact and that under the law of Nebraska, Spicer Ranch's damages are limited to the difference in market value of its property prior to and following the fire.

On June 16, 2005, Spicer Ranch sought leave to file an amended petition, making the same allegations as in the original petition, but alleging repair of fire damage to the windbreak at a cost of at least $270,098, rather than $520,000 as stated in the original petition. Also on June 16, Spicer Ranch filed its motion for summary judgment alleging that there is no issue of material fact regarding Schilke's negligence. Spicer Ranch further alleged that there is no issue of material fact regarding damages and that under Nebraska law, Spicer Ranch is entitled to receive the replacement cost of the windbreak damaged by Schilke's negligent actions.

In Schilke's answer to the amended petition, he alleged that Spicer Ranch was not the real party in interest in that it was not the owner of the real estate involved in the action. Schilke denied the negligence claim. Schilke further alleged that any damage would be limited to the difference in market value of the adjacent Spicer Ranch property immediately prior to and immediately following the fire.

A hearing on the motions for summary judgment was held on July 12, 2005. At that hearing, Schilke offered into evidence his deposition; the depositions of David, Schilke's son, Thomas Luhrs, and John Widdoss; the report by Luhrs; the reports by Widdoss dated February 17 and November 17, 2004; and the affidavit of Luhrs. Spicer Ranch offered into evidence the deposition of Thomas Wiens, the report by Wiens, and the affidavit of David. The court received all exhibits.

The district court filed a journal entry on August 5, 2005, which granted Spicer Ranch's motion for summary judgment as to Schilke's liability, finding that there were no issues of material fact with regard to the negligence issue—a finding not challenged on appeal. The district court found, however, that Schilke was entitled to summary judgment regarding the measure of damages, finding the proper measure of damages to be the comparison of the "before and after" values of the property. Rather than attempting to summarize the trial judge's reasoning, we set forth the district court's ruling in some detail.

The Court's ruling is based upon the following facts which are not disputed and which are material:

1. [Schilke's] negligence caused a fire in an irrigated cornfield, which the defendant [Schilke] cash rented from the plaintiff [Spicer Ranch]. Before the fire was out, it burned a windbreak owned by the plaintiff consisting of red cedar and juniper trees, about five hundred yards from the plaintiff's house up a small hill. The evidence shows that the plaintiff utilized the windbreak in the normal fashion of slowing the wind, providing shelter for cattle, for calving, for horses and for general farm use.

2. The windbreak was on a tract of farm ground consisting of approximately 110 acres of corn and pastureland.

3. The plaintiff, the defendants [sic] and defendant's son in depositions all testified about the windbreak and its uses for cattle and horses and the plaintiff, the defendant, and the defendant's son all specifically called the trees a windbreak.

4. The plaintiff's expert valued the windbreak at replacement costs, determining replacement costs and a loss to the plaintiff of [$]270,098.00 for replacement of the trees.

5. The plaintiff[,] in [David's affidavit], discussed the recreational uses for the windbreak and his intentions to use the windbreak for recreational purposes, such as hunting and enjoyment of nature. The windbreak also was intended to be used by the plaintiff's children for school projects such as FFA projects involving the growth of trees in the Chase [C]ounty area. The Court notes parenthetically, that the youngest child of the plaintiff is 25 years old, and the plaintiff is in the farming and ranching business.

6. The Court further finds and orders that to value the trees on this 110 acre tract at $270,098.00 far exceeds the value of the real estate involved. The irrigated corn ground and pasture were not permanently damaged but there was some loss for the plaintiff for the remainder of that pasture season. The trees included only made up a small percentage of that 110 acre tract and that small percentage of land over a period of years likewise would not be permanently damaged because of the loss of the trees.

7. The plaintiff argues that the $270,098.00 does not exceed the value of all the real estate owned by the plaintiff. That fact is true and is not disputed, the plaintiff owns some 4,400 acres with a total value of $1,450,000.00, approximately. However, this analysis, using the entire 4,400 acres to show that the $270,098.00 would not exceed the value of the real estate would tend to considerably overvalue the damages suffered by the plaintiff. If the Court just considers the 110[-acre] tract that was damaged by the fire, this would amount to some $2,000.00 per acre for irrigated corn ground that was not permanently damaged, for pastureland that was not permanently damaged and for a very small acreage of trees that were permanently damaged but that can be replanted. The value of the $2,000.00 per acre for the 110 acres of ground is not reasonable and is not an accurate measure of damages.

The court awarded Spicer Ranch $30,000, "which is the highest amount of damages suffered by [Spicer Ranch] according to the before and after damage appraisal."

Spicer Ranch timely appeals the district court's order.

## ASSIGNMENTS OF ERROR

Spicer Ranch asserts that the district court erred in (1) concluding that the proper measurement of damages is the "'before and after'" measurement of damages and (2) determining that the replacement cost of the trees exceeded the market value of the property prior to Schilke's negligence.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

*Real Party in Interest.*

■ Schilke argues that Spicer Ranch is not the real party in interest because the land in question is owned by the Spicer Family Children's Trust. Thus, Schilke argues that the district court lacked subject matter jurisdiction to grant summary judgment in favor of Spicer Ranch and to award it money damages. To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. *Misle v. Misle*, 247 Neb. 592, 529 N.W.2d 54 (1995). The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.*

The Spicer Family Children's Trust owned the 4,040 acres of land on which the fire damage occurred. Spicer Ranch leased all 4,040 acres from the Spicer Family Children's Trust—although the lease is not in our record, David's testimony about such is

undisputed. Spicer Ranch in turn leased a portion of the 4,040 acres to Schilke—again the lease is not in our record, so this fact is not controverted. Thus, the undisputed evidence shows that Spicer Ranch was the lessee of all of the land, a small portion of which was then subleased to Schilke. Therefore, Spicer Ranch is liable to the Spicer Family Children's ·Trust for the damages from the fire. See Neb. Rev. Stat. § 76-1421 (Reissue 2003) (upon termination of tenancy, tenant shall place dwelling unit in as clean condition, excepting ordinary wear and tear, as when tenancy commenced). See, also, *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989). As a result, Spicer Ranch has "a legally protectable interest or right in the controversy that would benefit by the relief to be granted," because it is liable, as a lessee, to the Spicer Family Children's Trust for any damages caused by the fire, and it has a "real interest" in collecting such damages from Schilke. See *Misle v. Misle, supra*. Therefore, Spicer Ranch is a real party in interest and has standing to sue Schilke for damages.

*Measure of Damages.*

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that· the movant is entitled to judgment if the evidence were uncontroverted at trial. Once the moving party makes a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifts to the party opposing the motion. *Id.*

Spicer Ranch asserts that the district court erred in concluding that the proper measurement of damages for the tree windbreak is the "before and after" measurement of damages. In support of that assertion, Spicer Ranch cites to the following proposition in *Keitges v. VanDermeulen*, 240 Neb. 580, 589-90, 483 N.W.2d 137, 143 (1992):

[I]n an action for compensatory damages for cutting, destroying, and damaging trees and other growth, and for related damage to the land, when the owner of land intends to use the property for residential or recreational purposes according to his personal tastes and wishes, the owner is not limited to the difference in value of the property before and after the damage or to the stumpage or other commercial value of the timber. Instead, he may recover as damages the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible. However, the award for such damage may not exceed the market value of the property immediately preceding the damage.

The district court's implicit rationale for its calculation of damages is that the land was used for the farming business, not for any recreational purposes—apparently because David's youngest child was then 25 years old. The court concluded that the replacement value of the trees exceeded the value of the land, apparently limiting its consideration of the land's value to just the 110 acres involved in the fire rather than the whole 4,000-plus-acre ranch. These findings are found in paragraph 7 of the district court's order quoted above. A close reading of such paragraph shows that it is filled with the trial judge's factual findings and conclusions. However, there is a material issue of fact as to whether the windbreak was used for residential and recreational purposes, as stated in David's affidavit, or whether the windbreak was simply a "normal and average farm windbreak," as could be implied from David's deposition testimony and as stated in the affidavit of Luhrs, a real estate appraiser. The measure of the plaintiff's damages depends upon the evidence presented at trial and might require alternative instructions depending upon the jury's determination of contested factual issues. See *Keitges, supra.* See, also, *Hart v. Chicago & Northwestern R. Co.*, 83 Neb. 652, 120 N.W. 176 (1909) (in suit to recover damages for timber injured by fire, court may decline to instruct jury that measure of damages is difference in value of plaintiff's land before and after fire, where trees have value separate from land). But clearly, the trial judge decided

these issues on a motion for summary judgment, when the real issue on such a motion is whether there is a genuine issue of material fact. See *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000).

However, neither party addresses the heart of the problem which we face—that there clearly are issues of fact with respect to how the damaged trees were used, which ultimately affects how damages are calculated. Because a material issue of fact exists, summary judgment with respect to damages was improper. We find that the district court's award of summary judgment with respect to damages was plain error. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Zwygart v. State*, 270 Neb. 41, 699 N.W.2d 362 (2005). Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion. *Id*.

Even under the "before and after" theory of damages used by the district court, the evidence revealed a range of damages—not just a fixed, undisputed figure of $30,000. Nonetheless, the trial judge made a factual finding when he awarded Spicer Ranch $30,000, "which is the highest amount of damages suffered by [Spicer Ranch] according to the before and after damage appraisal." The trial judge made a factual finding rather than determining whether a material issue of fact existed with respect to damages, which prevents summary judgment on the damage issue. Therefore, we reverse the order awarding $30,000 in damages.

## CONCLUSION

We affirm the district court's order with respect to liability, a finding which was not assigned as error on appeal. However, we find that material issues of fact exist which prevent summary judgment with respect to damages. Therefore, we reverse the order awarding $30,000 in damages and remand the cause for further proceedings to determine the amount of damages

suffered by Spicer Ranch as a result of Schilke's undisputed negligence.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

HANNON, Judge, Retired, concurring.

I agree with the majority's opinion, except I believe a part of the rule quoted from *Keitges v. VanDermeulen,* 240 Neb. 580, 483 N.W.2d 137 (1992), is not applicable to the case at hand and is misleading when applied to this case. I refer to that part which states, "when the owner of land intends to use the property for residential or recreational purposes." *Id.* at 589, 483 N.W.2d at 143. Insofar as I can learn, this particular part of the rule first appeared in the *Keitges* case. In *Keitges,* the geographic location of the property, the location of the trees on the property, and their origin were such that the trees could have value only if they had value for recreational and residential purposes. The evidence in that case showed there was an indigenous growth of trees and shrubs on the edge of a 10-acre parcel of real estate located in extreme eastern Nebraska. That situation is in no way comparable to a deliberately planted and watered grove of trees near a farmstead on a 4,000-acre ranch in southwestern Nebraska.

The *Keitges* court noted, "One person's unsightly jungle may be another person's enchanted forest." *Id.* The facts in *Keitges* bore out that observation. The defendant, who owned a similarly sized adjacent piece of property, apparently thought nothing of taking a bulldozer and chain saw to the trees. The defendant's evidence was to the effect that the value of the plaintiff's property was not decreased by his destructive action. In *Keitges,* the undisputed evidence was to the effect that the plaintiff intended to build a residence on the property in the future and to enjoy the property as a family retreat for " 'nature hikes' " and " 'nature study' " in the meantime. 240 Neb. at 590, 483 N.W.2d at 143. The evidence does not indicate that he had any other purposes for the trees. To my mind, on the point I raise, I think the case stands for the proposition that one's lawful use of his or her property is entitled protection from a negligent neighbor even if the neighbor, or even the neighborhood, does not think much of the landowner's use.

The evidence in the case at hand is that Spicer Ranch's trees were planted in the early 1980's and subsequently watered and that they not only sheltered the home but also gave shelter and protection for calving and horse operations. I think anyone familiar with the history of tree claims during pioneer days or the shelterbelts starting in the 1930's knows that trees in outstate Nebraska can be considered either priceless or a detriment, or something in between, depending upon the values and economic interests of the owner.

Since in the past trees could not be readily moved and irrigated, the older cases involving trees did not consider the possibility of replacing damaged and destroyed trees in rural areas. However, those cases did recognize the value of the use the landowner made of the trees and the value the owner placed on them. The landowner's recovery was not limited to the decrease in the value of the real estate. The old cases held that where the trees had no value separate from the land, testimony on the value of the trees with reference to the real estate was admissible. See, *Alberts v. Husenetter*, 77 Neb. 699, 110 N.W. 657 (1906); *Union P. R. Co. v. Murphy*, 76 Neb. 545, 107 N.W. 757 (1906); *Missouri P. R. Co. v. Tipton*, 61 Neb. 49, 84 N.W. 416 (1900). The evidence in these cases was invariably the value the owner and his neighbors placed on the trees as they set on the land.

The old cases involving trees are not helpful on replacement damages, but they do throw some light on what causes trees to have a value separate from the real estate. In *Alberts, supra*, a Brown County case, the court recognized the shortage of natural timber in western Nebraska as well as the value of the landowner's cottonwood and mulberry trees as ornaments and as furnishing shade in the summer and shelter in the winter. Insofar as I can tell, none of these cases attached any significance to recreation or residency as opposed to just farm use. In my opinion, it is common in western Nebraska for shelterbelts to protect farmsteads from the wind, to provide shade, and to add beauty, but shelterbelts located a distance from the farmers' and ranchers' homes are used to shelter animals, both domestic and wild. Some shelterbelts are even used by nonfarm businesses. Such owners are also entitled to protection from tort-feasors.

In my opinion, depending upon the evidence, the rule is that if an owner is using land according to his or her personal tastes and wishes for any lawful purpose, the owner is entitled to recover the reasonable replacement cost and improvement to the extent of the value of the real estate upon which the owner has seen fit to maintain the trees.