MARY PULLIAM, ADMINISTRATRIX, APPELLEE, V. GUSTAF E.
MILLER, APPELLANT.

FILED APRIL 19, 1922.   No. 21890.

1.  **Negligence:** PLEADING: ADMISSIBILITY OF EVIDENCE.  Where a
petition charges specific grounds of negligence as a basis for re-
covery, and also contains a.general allegation of negligence on the
part of the defendant in causing the damage, and where no motion
for a more specific statement is filed, it is competent under the
general allegation of negligence to offer evidence of any fact which
contributed to the injury.

2.  ———:  SAFETY APPLIANCES.  The law does not require the owner
of machinery to use the most approved appliances to prevent in-
jury or damage.   It is sufficient if he uses machinery which is
generally used for the same purpose, and which is reasonably safe
when operated in the customary manner.

3.  ———:  QUESTION FOR JURY.  Under the facts as disclosed in the
opinion, it was for the jury to determine whether the manner of
the operation of the tractor engine was negligence, and also
whether it was negligence to use the tractor engine, under all the
circumstances.

APPEAL from the district court for Hitchcock county:
HANSON M. GRIMES, JUDGE.  *Affirmed.*

*John F. Cordeal,* for appellant.

*C. W. Meeker* and *Stewart, Perry & Stewart, contra.*

Heard before LETTON, DEAN and DAY, JJ., ALLEN and BEGLEY, District Judges.

DAY, J.

Plaintiff recovered a judgment against the defendant for $963 as damages for having negligently destroyed by fire 30¼ acres of growing wheat owned by the plaintiff's intestate. The defendant appeals.

It appears from the record that on July 15, 1919, at about mid-afternoon, the defendant was engaged in harvesting a field of wheat owned by him, using for that purpose a combined harvester-thresher propelled by a tractor having as its motor power a gasoline engine. This harvester-thresher, as the name indicates, cut and threshed the grain as it moved along. On the under side of the tractor, and connected with the cylinder by a short pipe, was the muffler drum, approximately 16 inches long and 18 inches in diameter. Connected to the muffler drum, and extending downward, was a short pipe, known as the "exhaust pipe." This pipe was about 3 inches in diameter and 6 inches long, its lower end being within 18 inches from the surface of the ground. The exposed end was covered with a cap. Several slits or openings were cut in this pipe for the purpose of allowing the gases from the engine to escape. During the progress of the work the tractor was stopped for the purpose of oiling some of the bearings, and in cranking the engine to start the tractor there was an explosion in the muffler drum which shot out a flame through the slits of the exhaust pipe and ignited the stubble underneath the tractor. The defendant had been operating the tractor by the use of kerosene, but at the time he was cranking the engine he was priming it with gasoline. At the time of the fire defendant had the machine adjusted so as to cut only the heads of the growing grain, leaving a stubble estimated by the witnesses at from 12 to 20 inches high. There is a dispute between the plaintiff's and defendant's witnesses as to the nature of the

wind at the time.  All agree that it was blowing from the south, plaintiff's witnesses saying that there was considerable wind, and defendant's witnesses testifying to the effect that it was a slight wind, but that after the fire had started the wind raised.  The wheat field of the plaintiff's intestate was immediately north of the defendant's field, being separated therefrom by the highway.  The place where the fire started was approximately a quarter of a mile from the wheat field of the plaintiff's intestate.  Notwithstanding the efforts made by the defendant and his men employed on the machine, together with the assistance of neighbors, to extinguish the fire, it spread into the wheat field of the plaintiff's intestate and destroyed 30 and a fraction acres of the wheat just ripe for harvest.  It further appears that the defendant was inexperienced in the use of a tractor, having operated one but a few days prior to the fire.  There is also proof on behalf of the plaintiff, denied by the defendant, that he had on the day before the fire used a piece of sheet iron as a spark arrester underneath the exhaust pipe, but that it had come off and that he had not replaced it.

A large number of errors are assigned for a reversal of the judgment, but it seems unnecessary that all of them should be considered.  At the outset there is a sharp conflict between the parties as to the grounds of negligence alleged in plaintiff's petition.  Defendant admits that two grounds of negligence are well pleaded, namely:  First, that the defendant was negligent in failing to have the exhaust pipe of the tractor properly protected with a spark arrester or some other safety appliance to prevent the exhaust from the engine from igniting the stubble; and, second, in negligently permitting the fire to spread after it was started, and allowing it to spread to the wheat field of the plaintiff's intestate.  It is now urged by the defendant that it was error to permit the introduction of any evidence, or to instruct the jury, upon any other theory than that set forth in the two grounds of negligence above indicated.  On the other hand, it is contended by the plaintiff that, in

addition to the specific grounds of negligence pleaded, there was a general charge in the petition that the defendant negligently and carelessly started the fire, and under this general allegation it was proper to introduce evidence as to the manner of operating the tractor in starting it, as well as of the general circumstances under which it was then being used. The two grounds of negligence, to which reference has been made, are very clearly stated in the petition, and, in addition thereto, there is a clause which reads as follows: "While said defendant was so harvesting his said wheat on said northeast ¼, * * * as aforesaid, by his negligence and carelessness and failure to provide proper protection and spark arresters, * * * started, set and kindled, and caused a fire to catch in said stubble." If the pleader had alleged, "by his negligence and carelessness *in* failing to provide proper protection and spark arresters, etc.," then it would seem to be a fair interpretation of the petition to say that this clause referred back to the first ground of negligence pleaded, but by the use of the conjunction "and" in the clause of the petition, it appears that a wider meaning was intended. The phrase, "and failure to provide proper protection and spark arresters," in the clause above quoted, is parenthetical, so, reading the petition and giving to it a liberal interpretation, and stripping it of all unnecessary words, it is a charge that the defendant negligently and carelessly set and kindled a fire in the stubble. It is now well settled that a general allegation of negligence is good as against a demurrer, and under such an allegation evidence of any fact which contributed to the injury sued for is competent and relevant. *Omaha & R. V. R. Co. v. Wright,* 49 Neb. 456; *Omaha & R. V. R. Co. v. Crow,* 54 Neb. 747; *Union P. R. Co. v. Vincent,* 58 Neb. 171; *Chicago, R. I. & P. R. Co. v. O'Donnell,* 72 Neb. 900. No motion was made to make the petition more definite and certain, and the general allegation of negligence must be held sufficient. *Union P. R. Co. v. Vincent,* 58 Neb. 171. It would seem, therefore, that there was no error in admitting evidence tending

to show negligence in the manner of operating the tractor, or its operation, in view of the circumstances then present.

Complaint is made of the giving and refusal of certain instructions. It may be said that at least one of the instructions given is much too favorable to the defendant. Others seem to favor plaintiff. They are somewhat confusing and uncertain; but, when considered as a whole in connection with the facts in evidence, we believe defendant was not prejudiced by the giving or refusal of any of them. Defendant was a man unaccustomed to the use of a tractor; the exhaust pipe, according to the defendant's son, who measured the distance, was only 18 inches from the ground; the stubble which was so dry that the grain was threshed as it was cut, was admitted by defendant to be 12 inches high, and another witness testified it was from 16 to 20 inches high; so that the end of the exhaust, from which sparks or flame might be and were driven by an explosion, was in close proximity to, and in fact right among, the dry stubble. These facts of themselves, it seems to us, are sufficient to establish in the minds of reasonable men that the defendant was negligent in placing a machine of such nature in such an environment.

There can be no doubt of the right of a farmer to use a gasoline engine in aid of husbandry, and in such case the law does not require that he use machinery of the most approved type. It is sufficient, as against the charge of negligence in the use of a machine, that it is of a type which is in general use for the same purpose, and which experience has shown is reasonably safe when operated in the usual and customary manner. We do not wish, however, to be understood as holding that the use of appliances and machinery such as are in general use in a like or similar business, and which are reasonably safe when operated in the customary manner, is, under all circumstances, a complete defense. On the contrary, we think there may be circumstances under which a proper machine or other instrumentality being used in the customary manner may nevertheless make its use negligence. Under ordinary circum-

Pulliam v. Miller.

stances the smoking of a pipe is not regarded as a negligent act, but the smoking of a pipe in a powder factory would be regarded as negligence in the extreme.

The manufacturer of the tractor probably did not consider that it would be used with the exhaust in such close proximity to such an inflammable substance as dry stubble. The tractor was of the usual and ordinary manufacture, and would probably have been perfectly safe if used in a place where the attending circumstances did not present such a dangerous combination. The evidence is undisputed that the fire originated directly under the tractor after an explosion, and the jury were justified in finding for plaintiff. In fact, it seems to us no other conclusion was warranted by the evidence.

It is also urged that the instruction on the measure of damages is wrong, in that it fails to take into account the cost of harvesting, threshing, and transporting the grain to market. The instruction is not entirely clear. The general rule is that the measure of damages for the destruction of a growing crop is the value thereof in the condition in which it exists at the time of its destruction. *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745. In case the crop is matured the value is usually proved by showing the market value, less the necessary cost of harvesting, threshing, and transporting to market. In the present case there was testimony tending to show that the wheat was worth $2 a bushel, and that the field would yield 20 bushels an acre. While there is testimony as to the cost of threshing the wheat, there was none as to the cost of transporting it to market. The verdict was for $1,092. The trial court ordered a remittitur of $129, which was filed. While it is not clear why the trial court ordered this remittitur to be filed, in all probability the cost of transporting the wheat to market was the principal factor considered.

AFFIRMED.