E. JAMES KULA, APPELLEE AND CROSS-APPELLANT, V. KENNETH M. PROSOSKI ET AL., APPELLEES AND CROSS-APPELLEES, COUNTY OF NANCE, APPELLANT AND CROSS-APPELLEE.

424 N.W.2d 117

Filed June 3, 1988.    No. 86-305.

John Morgan, Nance County Attorney, for appellant.

Steven M. Curry of Sampson, Curry & Hummel, for appellee Kula.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is the second appearance of this case; our former opinion in *Kula v. Prososki* is reported at 219 Neb. 626, 365 N.W.2d 441 (1985) (*Kula I*). This was a suit for injunctive relief and damages arising out of the acts of the County of Nance (County) and others in impeding the flow of surface waters off the land of the plaintiff. The trial court enjoined the defendants Prososki from restricting the flow of water in certain depressions, and ordered the defendant County of Nance to construct a culvert under a county road sufficient in capacity to drain the farmlands of the plaintiff. The court found the defendants Prososki not responsible for any damages to the plaintiff, from which no appeal was taken. Kula did appeal from a denial of damages against the County of Nance, which denial was based on the trial court's determination that there had been no compliance with the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983). We reversed and remanded for further proceedings to consider the issue of damages under Neb. Const. art. I, § 21, which provides that "[t]he property of no person shall be taken or

damaged for public use without just compensation therefor." An award of $14,454.92 was then entered by the district court, from which the County appealed and the plaintiff cross-appealed.

The County assigns as error the trial court's finding that Kula was entitled to damages, because the proof on that issue, i.e., the evidence offered in that regard, did not address the proper measure of damages. In his cross-appeal, Kula complains that the amount of damages awarded by the court was inadequate, based upon the evidence presented at trial.

In an appeal of an equity action, we must try factual questions de novo on the record and reach a conclusion independent of the findings of the trial court. However, where credible evidence is in conflict on a material issue of fact, we consider, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Johnson v. NM Farms Bartlett,* 226 Neb. 680, 414 N.W.2d 256 (1987). In *Johnson,* the plaintiffs sought damages and injunctive relief. NM Farms had not appealed the injunction entered against it, but the proceedings were still reviewed as an equitable action.

Nothing appearing in the record to the contrary, we assume in deciding this case that the order relating to the installation of the culvert eliminated future damages. Therefore, we are dealing with a situation involving temporary damage. Accordingly, the County's reliance on the rule relating to the measure of damages as being the difference in the market value of the land before and after the damage, where there has been no taking, cited in *Beach v. City of Fairbury,* 207 Neb. 836, 301 N.W.2d 584 (1981), refers to permanent damage and is inapplicable in this situation.

Where land, no part of which is taken, temporarily suffers damage compensable under Neb. Const. art. I, § 21, " 'the measure of compensation is not the market value but the value of the use for the period damaged.' " *Pierce v. Platte Valley Public Power and Irrigation District,* 143 Neb. 898, 902, 11 N.W.2d 813, 816 (1943), quoting *Gledhill v. State,* 123 Neb. 726, 243 N.W. 909 (1932). If the land is cropland, the best test of the value of its use is the value of the crops which could and

would have been grown upon the land. *Pierce, supra.*

Plaintiff seems to urge that, having remanded this cause to the district court for the consideration of the issue of damages, that decision becomes the law of the case and damages must be awarded, citing *Barker v. The Wardens & Vestrymen of St. Barnabas Church*, 176 Neb. 327, 126 N.W.2d 170 (1964). That case contains a correct statement of the law. However, in our earlier opinion in *Kula I*, we did not conclude that the plaintiff was entitled to damages, only that the failure to comply with the Nebraska Political Subdivisions Tort Claims Act did not preclude consideration of *possible* damages.

In *State v. Dillon*, 175 Neb. 350, 121 N.W.2d 798 (1963), we appeared to indicate that there were two different rules for measuring crop damage: one where the crops were totally destroyed, and one where there has been damage but not destruction. We said:

> "The measure of damages to growing crops destroyed by the wrongful act or omission of another is the value at the time of destruction. * * *
>
> "The measure where a crop is injured but not rendered entirely worthless as a result of the acts or omissions of another is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at the time injured less the expense of fitting for market that portion of the probable crop which was prevented from maturing."

*Id.* at 361, 121 N.W.2d at 804-05. That might suggest that the cost of harvesting and marketing would not be considered in the case of complete destruction of a crop.

However, *Dillon* relies on *Gable v. Pathfinder Irr. Dist.*, 159 Neb. 778, 68 N.W.2d 500 (1955), which in turn cited *Pulliam v. Miller*, 108 Neb. 442, 187 N.W. 925 (1922). *Pulliam* seems to suggest that whether the crop is damaged or destroyed, "the value is usually proved by showing the market value, less the necessary cost of harvesting, threshing, and transporting to market." *Id.* at 447, 187 N.W. at 927. We see no reason why, in the case of a crop which is totally destroyed, the owner should not, in establishing his loss, prove not only the market value of the crop, but also the cost of harvesting and bringing the crop to

market.

*Miller v. Drainage District*, 112 Neb. 206, 199 N.W. 28 (1924), permitted the plaintiffs, who were the owners of the crops and tenants of the land, to testify as to crop values. " 'In an action for damages on account of an injury to chattels, the owner of such chattels is qualified by reason of that relationship to give his estimate of their value.' " *Id.* at 209, 199 N.W. at 29.

The cost of harvesting and marketing was found to be relevant in establishing the value of destroyed annual crops in *Miller v. Sabinske*, 322 S.W.2d 941 (Mo. App. 1959), where the court found it necessary

> First, to estimate the probable yield had the crop not been destroyed; second, calculate the value of that yield in the market; and third, deduct the value and amount of labor and expense which subsequent to the destruction, and but for it, would have been required to mature, care for and market the crop.

*Id.* at 948. Similarly, in *Casey v. Nampa and Meridian Irrigation District*, 85 Idaho 299, 379 P.2d 409 (1963), that court stated:

> "It would seem, then, that the value of a growing crop of wheat at the time of its destruction must be determined from evidence of the probable yield and the market value of the crop at maturity, less the probable cost of placing the growing crop in a marketable condition."

*Id.* at 304, 379 P.2d at 412.

An exception to this rule appears in *Thompson v. Mattuschek*, 134 Mont. 500, 333 P.2d 1022 (1959). There, the court found that where defendant's cattle trespassed on plaintiff's land and destroyed part of a barley crop, in arriving at the value of the crops damaged the defendant was not entitled to credit for the estimated cost of harvesting the grain which was damaged, because the cost of harvesting the grain in its damaged condition was the same as it would have been had the cattle not trampled and consumed a part thereof.

Finally, we need to discuss the rule relating to additional expenses incurred by reason of the action of the County. This had to do with replanting expenses and treatment of the land to eliminate the chemical problems and salt caused by the ponding

of water. Although this court has never passed directly on the particular situation presented here, we do have some cases that are of help in reaching a conclusion.

In *Applegate v. Platte Valley Public Power and Irrigation District*, 136 Neb. 280, 285 N.W. 585 (1939), the court said:

> The measure of damages for the injury to the land is the difference in value before and after the dam was erected, taking into consideration the uses to which the land was put and for which it was reasonably suitable. To determine any such loss, the present condition of the soil proximately caused by the damming of the water and all effects up to the present time would be relevant to determine its value.

*Id*. at 288, 285 N.W. at 590.

Collateral expenses were allowed in *Armbruster v. Stanton-Pilger Drainage Dist.*, 169 Neb. 594, 100 N.W.2d 781 (1960), for land taken by erosion caused by a waterfall created by the defendant in channel reconstruction of the Elkhorn River.

> [E]xpenses for additional fencing, repairs, removal, and rebuilding thereof; the expenses of removal and repair of plaintiffs' private roads and bridge, together with inconvenience and disadvantage caused thereby; the expenses of repair and the threatened peril and damages to one of plaintiffs' two valuable irrigation wells, irrigation and sewer systems, and to their buildings; and the expenses incurred attempting, in good faith, to stop the erosion and damages [were allowed].

*Id*. at 610, 100 N.W.2d at 792.

Other jurisdictions have dealt with this problem. In *Wilcox Oil Company v. Lawson*, 341 P.2d 591 (Okla. 1959), the costs of reseeding a perennial crop were permitted, together with the value of any matured crop destroyed. The alfalfa was readily restored by reseeding, yet both sums were to be warranted once proper evidence was adduced. The reasonable cost of reseeding bluegrass and the reasonable rental value of the area destroyed were judged proper in *Miller v. Sabinske, supra*, as damages resulting from total crop destruction.

It is our belief, and we so hold, that where the land damaged can be returned to its prior condition by treatment, grading, or

otherwise, the damage is temporary and the landowner is entitled to such expenses as part of his or her damages.

The defendant County does not in fact challenge the specific elements of damages claimed by the plaintiff or the proof thereof; it insists only that the wrong measure of damages was employed, which we have earlier discussed, and that the damage was not caused by the County.

There was some evidence of flooding on plaintiff's land prior to the road construction, offered through the testimony of neighboring farmers that water had been ponding on this property for 50 years, or at least before the 1970s. Plaintiff, on the other hand, introduced testimony from the county assessor that water did not earlier pond in any appreciable amount on the farm. Kevin Prior, an engineer, testified to relatively level elevations on the Kula farm, and characterized the whole area as being generally flat. From our examination of the entire record, we conclude that the flooding up until 1983, the time of the trial, and of which complaint has been made, was due to the action of the County in raising the grade of the road without providing for an adequate culvert.

We now turn to the specific elements of damages proved by a preponderance of the evidence to have occurred due to the action of the County. Plaintiff alleged a loss of 30 acres in crop production for the year 1979, the reasonable rental value of which was $3,000. Unfortunately for the plaintiff, the record does not support such a claim, and furthermore, plaintiff seems to have abandoned this claim in his brief on appeal.

Plaintiff's expert witness, Ray Starostka, a farmer and consultant in fertilizer, seeds, and agricultural research, with particular training in irrigation and drainage of agricultural lands and who holds a Ph.D. in agriculture, testified as to six observations made by him of plaintiff's land in 1982 and 12 similar examinations in 1983. He testified that for the year 1982, for 110 acres of plaintiff's land affected by ponding waters, a normal yield would have been 90 bushels per acre, or a total of 9,900 bushels of corn. However, because of the excess water, the production for that year was actually 6,500 bushels, or a loss of 3,400 bushels. He predicted approximately the same loss for 1983.

The testimony of the plaintiff himself, as well as that of certain farmers who were familiar with plaintiff's farm and had done custom cultivation and harvesting of that land, more than supported the conclusions of Dr. Starostka.

There seems no dispute but that the market price of corn in 1982 was $2.65 per bushel, and for 1983, $2.70. Multiplying these prices by the loss of yield for each year results in gross losses of $9,010 and $9,180 respectively, or a total for the two years of $18,190.

The loss referred to was a gross loss and did not take into consideration the costs of planting, cultivating, harvesting, and marketing. However, we are not talking about a total loss, but a reduction in yield. In *Thompson v. Mattuschek*, 134 Mont. 500, 333 P.2d 1022 (1959), that court held that because the loss was due to a short crop, not a total destruction, no allowance for marketing costs was necessary.

> Defendant also argues that the award of compensatory damages is speculative because he should have been credited with the cost of harvesting and marketing the barley and charged with compensatory damages only in the amount of plaintiff's net loss. We agree with plaintiff's position that because plaintiff did harvest his barley and his loss is claimed not in destruction of crop but in reduction of yield, the reduction itself is his net loss.

*Id*. at 509, 333 P.2d at 1027. We have no problem adopting that rule.

There was some evidence of replanting costs for the year 1982, totalling $5,705.22. This is found in a handwritten memorandum furnished by the plaintiff without explanation. We are not convinced that such a loss was either reasonable or necessary.

Finally, the witness Dr. Starostka testified that in order to return the soil on the 110-acre tract to its normal condition before the water damage, it would be necessary to eliminate the accumulation of soluble salts and bicarbonates caused by the ponding. He estimated the costs to run in the vicinity of $4 to $6 per acre for the next 4 years. Taking the more conservative figure, that amounts to a total for treatment of $1,760.

In conclusion, from a de novo review of the record, we are

convinced that plaintiff's total damages, proved by a preponderance of the evidence to have resulted from the public improvement made on the road by the County of Nance, total $19,950. The judgment of the district court is modified accordingly, and as modified, it is affirmed.

AFFIRMED AS MODIFIED.