Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/22/2019 09:06 AM CDT

- 684 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

Thomas M. Russell and Pamela J. Russell,
appellants, v. Franklin County,
Nebraska, appellee.
___ N.W.2d ___

Filed October 15, 2019.    No. A-18-827.

1. **Summary Judgment.** Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.
3. **Constitutional Law: Eminent Domain: Damages.** The words "or damaged" in Neb. Const. art. I, § 21, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property.
4. ____: ____: ____. Neb. Const. art. I, § 21, broadens the entitlement for just compensation beyond property that is actually "taken" by the governmental entity and includes compensation for property that is damaged in the sense that the market value of the property has been diminished even if the property is not actually taken.

Appeal from the District Court for Franklin County, Stephen R. Illingworth, Judge, on appeal thereto from the County Court for Franklin County, Timothy E. Hoeft, Judge. Judgment of District Court affirmed.

Matthew D. Hammes and Cristina Fackler, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellants.

- 685 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

Brandy R. Johnson, of Governmental Law, L.L.C., and Henry Schenker, Franklin County Attorney, for appellee.

Pirtle and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

Thomas M. Russell and Pamela J. Russell brought an inverse condemnation action against Franklin County, Nebraska (the County), after the County cut down trees on the Russells' property. The district court for Franklin County granted the County's motions in limine to exclude testimony of the Russells' expert witnesses and granted its motion for summary judgment. Based on the reasons that follow, we affirm.

## BACKGROUND

The Russells own 164 acres of rural property in Franklin County. The property consists of 43 acres of cropland, and the remaining 121 acres is pastureland used for "cattle feeding, . . . hunting, bird watching and photography," as well as gathering morel mushrooms. There is no residence on the property, and the only buildings there are a utility shed and a garage. Thomas' parents owned the land before he did, and it had been owned by his family for 47 or 48 years.

On December 4, 2015, Michael Ingram, the highway superintendent for the County, sent an email to Thomas seeking permission to cut down trees in a certain area of the Russells' property for the purpose of improving visibility for drivers on a county road adjacent to the Russells' property. A map was attached to Ingram's email identifying the area where the County wanted to remove the trees. Thomas discussed the request with his parents, because he did not want them to be upset if trees were removed. Thomas then told Ingram he could proceed with removing the trees in the area identified on the map.

County employees subsequently began cutting down and excavating trees on the Russells' property. However, they did

- 686 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

not remove trees from the area the County had identified and had received permission from Thomas to remove. Instead, the county employees cut down and uprooted 67 trees on two other locations on the property, exceeding the scope of the permission given by Thomas. The two areas affected totaled 1.67 acres.

Around December 13, 2015, Thomas' mother called Thomas because she was upset about the location of the trees removed. Thomas called Ingram and told him to stop cutting any more trees until he could take a look at where the County had been working. On December 14, Ingram sent an email to Thomas apologizing for "upsetting" the family, admitting that the County encroached further than it originally planned, and explaining the County's plans for removal of more trees. On December 15, Thomas informed Ingram that he would not allow the County to remove any more trees on his property.

In January 2017, the Russells filed a "Petition for Inverse Condemnation" against the County in Franklin County Court, alleging an unlawful taking of their property for a public use, and because they had not received just compensation therefor, they sought damages and other relief using the procedures set forth in Neb. Rev. Stat. § 76-705 et seq. (Reissue 2018). Thereafter, appraisers were appointed and a return of appraisers was filed setting forth the damages sustained by the Russells. Unsatisfied with the damages set by the appraisers, the Russells filed a petition in Franklin County District Court seeking just compensation for the trees that were unlawfully taken.

Both parties designated experts to give opinions on how damages should be measured and the amount of damages sustained. Both parties filed motions in limine seeking to exclude the testimony of the opposing party's expert—each side claiming the other's expert was applying an incorrect measure of damages.

The County then filed a motion for summary judgment alleging that there was neither a genuine issue of material fact

- 687 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

as to the market value of the Russells' property either before or after the "'taking'" by the County, nor that the County "'took'" a temporary easement by exceeding the scope of permission they had from the Russells to cut down or remove trees from their property.

A summary judgment hearing followed. At the hearing, five exhibits were offered and received into evidence without objection, subject to the motions in limine that were filed by both parties with respect to expert testimony. Exhibit 1 was the deposition of Thomas; exhibit 2 was the deposition of Ingram; exhibit 3 was the deposition of Cody Gerdes, the County's expert; exhibit 4 contained all the exhibits utilized at the depositions of Thomas, Ingram, and Gerdes; and exhibit 5 was the deposition of Jack Phillips, one of the Russells' experts, and the exhibits utilized at that deposition.

The evidence showed that Gerdes, the County's expert, was a Nebraska licensed and certified real estate appraiser who focused on commercial and agricultural properties. Gerdes visually examined the Russells' property and conducted an appraisal analysis. In his analysis, Gerdes used comparable market sales of similar rural properties in the area that had cropland, pastureland, and native trees. He determined that the highest potential value and best use of the Russells' property was agricultural use.

Gerdes then evaluated the property based on its highest potential value and determined the difference in the fair market value of the Russells' land before and after the County's taking of trees on the property. He determined that the Russells' entire property before the taking had a value of $338,600. Thomas did not disagree with Gerdes' valuation. Gerdes further determined that the property had a value of $338,400 after the taking. Therefore, he determined that the damages to the property, based on market data comparisons, amounted to $200.

Phillips, one of the Russells' experts, was a registered consulting arborist. He used a "Trunk Formula Method" of tree

- 688 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

appraisal to determine the value of the trees that were cut down or removed. This was done by measuring the stumps of the 45 trees that were cut down and estimating the size of the other 22 smaller trees that were removed by excavation based on the size of the holes where the trees had been located. He determined that the appraised value of the 45 trees with stumps remaining was $99,990 and that the appraised value of the excavated trees was $4,026, totaling $104,016.

The Russells had two other individuals provide them with estimates in regard to the claimed losses or damages for which they wanted to be compensated. A salesperson from a nursery and garden center estimated a "replacement cost" of $24,053.75 to plant 25 non-native trees. The species of trees used in the estimated cost were not the same species of trees that were removed from the Russells' property. Thomas also obtained an estimate from a representative of an excavating company in the amount of $46,700 for clean up of the trees that were cut down and removal of the remaining tree stumps.

The district court effectively granted the County's motions in limine, denied the Russells' motions in limine, and granted the County's summary judgment motion. The court determined that the County conceded it exceeded the authority to which the County and Thomas had originally agreed to and that the only disputed issue in the case was the measure of damages. The court stated that the Russells pled their case under the eminent domain statutes but were now arguing the case as an unlawful destruction of trees or as a negligence action, which are causes of actions that should be filed under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012 & Cum. Supp. 2018). The court found that the case of *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), was the applicable case in regard to the measure of damages and that the only admissible relevant evidence on the appropriate measure of damages was Gerdes' appraisal, which determined damages to be $200. The district court granted

- 689 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

the County's motion for summary judgment finding that there were no other material issues of fact. It also awarded the Russells $200 in damages for the taking.

## ASSIGNMENTS OF ERROR

The Russells assign, restated, that the district court erred in (1) granting the County's motion for summary judgment and failing to apply, as a matter of law, the proper measure of damages; (2) determining as a matter of law that the damages they sought were based on an unlawful destruction of trees or negligence action that can only be recovered in an action filed under the Political Subdivisions Tort Claims Act; and (3) granting the County's motions in limine and denying the Russells' motions in limine, based on the court's use of the wrong measure of damages.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Wehrer v. Dynamic Life Therapy & Wellness*, 302 Neb. 1025, 926 N.W.2d 107 (2019). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The Russells assign three assignments of error, all of which relate to the same argument: The court applied the wrong measure of damages. Accordingly, we address all three assignments simultaneously. However, as a preliminary matter, also before us is the County's motion to strike pages 24 through 42 of the supplemental transcript, as well as all references to the

- 690 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

county court appraisers' opinions in the Russells' brief, and to exclude these matters from consideration on this appeal.

The present appeal is from the district court's order granting summary judgment in favor of the County. The evidence before the district court in deciding the County's motion for summary judgment did not include the materials at pages 24 through 42 of the supplemental transcript that are the subject of this motion to strike. In addition, pages 24 through 42 of the supplemental transcript are not "[t]he pleadings upon which the case was tried . . ." as contemplated by Neb. Ct. R. App. P. § 2-104(A)(1)(a), nor any of the other materials specified by such rule as to be included in a transcript on appeal. We agree with the County, and therefore, we grant the County's motion and strike pages 24 through 42 of the supplemental transcript which are outside the record presented to us from the district court.

The district court found that the proper method of determining damages was the measure of damages applied in eminent domain cases, that is, that the Russells were entitled to recover the fair market value of the property taken, as well as any decrease in the fair market value caused by the governmental taking. The Russells contend that such measure of damages is only for situations where the County has permanently taken land from a landowner. They argue that the proper method of determining damages is the cost of reasonable restoration of the property to its preexisting condition or to a condition as close as reasonably feasible. They further contend that because the court adopted and applied the wrong measure of damages, it further erred in granting the County's motions in limine and denying the Russells' motions in limine.

Section 76-705 provides:

If any condemner shall have taken or *damaged property for public use* without instituting condemnation proceedings, the condemnee, in addition to any other available remedy, may file a petition with the county judge

- 691 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

of the county where the property or some part thereof is
situated to have the damages ascertained and determined.

(Emphasis supplied.)

Article I, § 21, of the Nebraska Constitution provides that
"[t]he property of no person shall be taken or damaged for
public use without just compensation therefor."

No one disputes that the County removed trees on the
Russells' property for a public use, that is, to improve visibility
upon a county road adjacent to the Russells' property. There is
also no dispute that 67 trees were removed from two locations,
neither of which was the location the Russells had given per-
mission to the County to remove trees from, and that the area
affected consisted of 1.67 acres.

[3,4] The Nebraska Supreme Court has stated that the words
"or damaged" in Neb. Const. art. I, § 21, include all actual
damages resulting from the exercise of the right of eminent
domain which diminish the market value of private property.
*Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311
(1998). The Nebraska constitutional clause broadens the enti-
tlement for just compensation beyond property that is actually
"taken" by the governmental entity and includes compensation
for property that is damaged in the sense that the market value
of the property has been diminished even if the property is not
actually taken. *Henderson v. City of Columbus*, 285 Neb. 482,
827 N.W.2d 486 (2013). Section 76-705 also includes compen-
sation for property that is damaged, in addition to property that
is taken.

In determining the appropriate measure of damages, the
district court relied on *Walkenhorst v. State*, 253 Neb. 986,
573 N.W.2d 474 (1998). In *Walkenhorst*, the State acquired,
through its power of eminent domain, two strips of the appel-
lants' property in order to reconstruct a highway. The property
was pastureland and cultivated cropland, and it included a
shelterbelt containing six rows of trees which extended for
approximately ½ mile. The State acquired fee title, three per-
manent easements, and a temporary easement to parts of the

- 692 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

appellants' property. A jury awarded the appellants $9,991, and they appealed. The appellants argued that the shelterbelt of trees located on property taken by the State constituted property separate and apart from the land and that they were entitled to compensation for the shelterbelt in addition to any compensation granted for the taking of the land.

The Supreme Court noted that it has consistently held that the damages in an eminent domain case are measured based on market value, whether it be fair market value of the property actually acquired or the decrease in market value of the remaining property.

The *Walkenhorst* court concluded:

> [T]he [appellants'] claim that they should be compensated separately for the value of the trees is without merit, for *vegetation is generally not to be valued separately* and then added to the value of the underlying land in a summation approach. [Citations omitted.] The [appellants] cannot be compensated for the value of the shelterbelt as a shelterbelt; instead, *the only relevant inquiry is how the presence of the shelterbelt on the condemned land affects the fair market value of the land taken.*

253 Neb. at 992, 573 N.W.2d at 481 (emphasis supplied).

We agree with the district court that *Walkenhorst* is applicable to the present case and provides the appropriate measure of damages. In *Walkenhorst*, the appellants wanted to be compensated separately for the value of the trees in addition to any compensation granted for the taking of the land. In the present case, while there was no permanent taking of any land, the Russells argue that they should be compensated based on the value of the 67 trees that were removed. The Supreme Court stated that vegetation is not to be valued separately and is only considered to the extent that its presence affected the fair market value of the land. Accordingly, the district court did not err in determining that the appropriate measure of damages is the difference in the fair market value of the land before and after the taking.

- 693 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

The Russells argue that the court erred in relying on *Walkenhorst* because it involved the measure of damages applicable to permanent damages sustained by a landowner when the county has actually "taken" the land of a landowner, as opposed to temporarily damaging property where the damage can be repaired and restored. The Russells contend that *Keitges v. VanDermeulen*, 240 Neb. 580, 483 N.W.2d 137 (1992), is the controlling case as it sets out the measure of damages for instances when temporary damages occur where the land can be returned to its prior condition. In *Keitges*, the plaintiffs sued their neighbors to recover damages for the destruction of trees, shrubs, and vegetation on their property when the neighbor attempted to clear a path for the construction of a fence between the two adjoining properties. The petition alleged two causes of action: willful trespass and negligent trespass. A jury found that defendant's trespass was not willful and returned a verdict in the plaintiffs' favor.

On appeal, the question presented was whether a plaintiff is entitled to recover the cost of restoring trees and vegetation on land which he holds for residential or recreational purposes when a portion of the natural woods is destroyed. The Supreme Court held:

> [I]n an action for compensatory damages for cutting, destroying, and damaging trees and other growth, and for related damage to the land, when the owner of land intends to use the property for residential or recreational purposes according to his personal tastes and wishes, the owner is not limited to the difference in value of the property before and after the damage or to the stumpage or other commercial value of the timber. Instead, he may recover as damages the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible. However, the award for such damage may not exceed the market value of the property immediately preceding the damage.

- 694 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

See *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982).

*Keitges*, 240 Neb. at 589-90, 483 N.W.2d at 143.

The court in *Keitges* found that the record showed the plaintiffs used their land for residential and recreational use. Therefore, the court concluded that the plaintiffs were entitled to recover the cost of replacing trees and vegetation damaged or destroyed by the defendant and that they must be allowed to present evidence of the feasibility and cost of such restoration.

The Russells contend that the damage caused by the County to the trees and the land can be restored and that the measure of damages should be the fair and reasonable cost and expense of restoration. They claim that the cost of the damage, to include the value and restoration of the trees and the cost to remove the stumps, totals $150,716.

The *Keitges* case can be distinguished, because it did not involve land taken or damages for public use, but, rather, was a lawsuit between two landowners. The plaintiffs brought tort actions, specifically willful and negligent trespass, against the defendant, where compensatory damages could have been sought and recovered. The present matter is not a tort action. The Russells never asserted any cause of action for negligence against the County. As the district court found in its order, the Russells pled their case under the eminent domain statutes but wanted to recover damages as if the case was one for unlawful destruction of trees or negligence, which are tort actions.

Further, there was no evidence that the Russells intended to "use the property for residential or recreational purposes according to [their] personal tastes and wishes." See *Keitges*, 240 Neb. 580, 589, 483 N.W.2d 137, 143 (1992). There was no house on the property and no evidence that the Russells had any intent of ever building a house. There was some evidence that the property was used at times for "hunting, bird watching and photography," as well as gathering morel

mushrooms, but there was no evidence as to how often these activities occurred or that this was the primary use. The property was also used for "cattle feeding."

Finally, the measure of damages set forth in *Keitges* cannot apply in the present case, because the cost of repair is only recoverable if the cost does not exceed the market value of the property immediately preceding the damage. The Russells claim the total cost of repair is $150,716 for the damaged 1.67 acres of land. The damaged 1.67 acres consists of approximately 1 percent of the entire 164-acre parcel. They do not dispute that the entire 164 acres were valued at $338,600 before the damage. Therefore, the predamaged value of the affected area was $3,386 (1 percent of $338,600). The estimated cost of repair greatly exceeds the predamaged market value of the damaged property. Accordingly, the measure of damages set forth in *Keitges* is not available to the Russells.

The Russells also contend that *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988), is instructive because it involved temporary damages to land that could be returned to its prior condition. In *Kula*, the plaintiff landowner brought an action against adjoining landowners and Nance County seeking injunctive relief and damages resulting from obstruction to flow of surface waters off the plaintiff's property. The damages included crop replanting and treatment of the land to eliminate the chemicals and salt on the land resulting from the ponding of water. On appeal, the Supreme Court determined that the situation was one involving temporary damage and that therefore, the rule relating to the measure of damages as being the difference in the market value of the land before and after the damage, where there has been no taking, refers to permanent damage and is inapplicable in this situation. The Supreme Court held that where the land damaged can be returned to its prior condition by treatment, grading, or otherwise, the damage is temporary and the landowner is entitled to such expenses as part of his or her damages.

- 696 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

The Russells contend that, like in the *Kula* case, their damages are temporary and they are entitled to recover expenses necessary to return the property to its prior condition. However, we again note that *Kula* is distinguishable from the present case in that *Kula* was not an eminent domain case, but, rather, it involved returning the property to its prior condition, which included crop replanting and treatment to eliminate chemicals and salt on the land. Returning the property to its prior condition in the present case involves replacing trees, some very large, that have naturally grown over numerous years in a wooded area. The removal of these trees is not temporary in the same sense as crops that are damaged.

In addition, the evidence from the Russells' three experts did not relate to returning the property to its prior condition. Phillips appraised the value of the 67 trees that were cut down and excavated, but he did not give an estimate of what it would cost to replace the trees. The salesperson from the nursery and garden center estimated a "replacement cost" of $24,053.75 to plant 25 trees, but there were 67 removed. Also, the species of trees used in the estimated cost were not the same species of trees that were removed from the Russells' property. The representative from the excavating company gave an estimate for clean up of the trees that were cut down and removal of the remaining tree stumps. These are not "replacement costs."

We conclude that the district court applied the correct measure of damages—the difference in the fair market value of the land before and after the taking. Gerdes was the only expert who provided relevant and admissible evidence on the correct measure of damages, concluding that the damages were $200. The testimony of the Russells' witnesses was irrelevant in that it was based on the wrong measure of damages. Therefore, we further conclude that the court did not err in granting the County's motions in limine and denying the Russells' motions in limine.

- 697 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

CONCLUSION

We conclude that the district court did not err in granting the County's motion for summary judgment and in awarding the Russells $200 in damages.

AFFIRMED.

MOORE, Chief Judge, participating on briefs.

BISHOP, Judge, dissenting.

I respectfully disagree with the majority that *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), controls the proper measure of damages to be used in the present matter. *Walkenhorst* involved an actual "taking" of land; that is not the case here. When considering compensation for a taking that does not involve an actual physical taking of land, but only damage to the property, the Nebraska Supreme Court has applied a different measure of damages depending on whether the damages are temporary or permanent. In this case, the damage done to the Russells' land was fixable to a degree and was thus temporary, not permanent. That distinction and applicable measure of damages was not considered by the district court when entering summary judgment, and therefore, I would reverse, and remand for further proceedings.

As noted, I do not see *Walkenhorst* being applicable to the facts here. *Walkenhorst* involved the governmental taking of private property for public use, and the question was whether a shelterbelt of trees on the taken land should be separately compensated in addition to the taken land; the Nebraska Supreme Court said no. Compensation was to be based upon the fair market value before and after the taking of the real property. Here, there was no real property physically taken; rather, the Russells' land was damaged by the removal of the trees for public use. Therefore, I do not read *Walkenhorst* as controlling the outcome here.

The Russells contend that the appropriate measure of damages for the removal of the trees from their property can be found in *Keitges v. VanDermeulen*, 240 Neb. 580, 483

- 698 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

N.W.2d 137 (1992), which involved an action for compensatory damages for the cutting, destroying, and damaging of trees and other growth not limited to the difference in value of the property before and after the damage. The *Keitges* court held that damages may be recovered for the cost of reasonable restoration of property to its preexisting condition or to a condition as close as reasonably feasible and that in such circumstances, evidence relating to the land's diminution in value has no relevance. However, as noted by the majority, the measure of damages used in *Keitges* was based upon the landowners' filing an action in negligence against another landowner, rather than through an inverse condemnation claim against a government body, as in the present matter. The Russells did not file a negligence action against the County in this case, and thus, I agree with the majority that *Keitges* can be distinguished on that basis. If this had been a negligence action against the County pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012 & Cum. Supp. 2018), perhaps the measure of damages applied in *Keitges* would have relevance here. That is not to say the damages described in *Keitges* would necessarily be inapplicable here, but that issue need not be decided for reasons discussed next.

The Russells also direct us to *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988) (*Kula II*), as authority for the proper measure of damages for the circumstances present here. I find this case to be more applicable than *Walkenhorst* as to what measure of damages to apply when real property is physically damaged, but not taken, for public use. In order to more fully understand the final analysis in *Kula II*, it is helpful to look at the original appeal filed in that case. In *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985) (*Kula I*), the Nebraska Supreme Court noted that the plaintiff, E. James Kula, sued adjoining landowners and Nance County for injunctive relief and damages. Kula claimed that

- 699 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

the adjoining landowners filled in a natural watercourse, causing surface waters to back onto his land, and that the county raised an adjoining highway and installed inadequate culverts which caused floodwaters to dam on to his land; Kula incurred damages as a result. See *id*. The district court granted injunctive relief, but as for damages, it concluded that Kula failed to comply with the Political Subdivisions Tort Claims Act and that the action had not been properly brought as an inverse condemnation case. On appeal, Kula claimed it was error for the district court to not award damages "for the alleged wrongful taking of his property by Nance County." *Kula I*, 219 Neb. at 628, 375 N.W.2d at 442. The Nebraska Supreme Court observed that the district court's reference to the fact that Kula did not file a proper inverse condemnation action likely meant that Kula did not first file an action under Neb. Rev. Stat. § 76-705 (Reissue 2018) in the county court to have the damages ascertained and determined. The Supreme Court agreed that the procedure under § 76-705 was not followed, but then pointed out Kula's rights under Neb. Const. art. I, § 21 (property of no person shall be taken or damaged for public use without just compensation), and stated that "[w]hen private property has been damaged for public use, the owner is entitled to seek compensation in a direct action under that constitutional provision." *Kula I*, 219 Neb. at 628, 375 N.W.2d at 443. The court further stated:

That section of the Constitution is self-executing, and legislative action is not necessary to make the remedy available. . . . The fact that the plaintiff could have sued in tort under the Political Subdivision Tort Claims Act does not preclude him from proceeding in a direct action for damages under the Constitution. . . .

Additionally, a landowner is not precluded from bringing an action for a mandatory injunction against public authorities to prevent damage to the owner's land caused by a public improvement when the public authorities

- 700 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

have declined to exercise their right of eminent domain. Also, the plaintiff had the right to join with his action for equitable relief his claim for temporary damages.

*Kula I*, 219 Neb. at 629, 375 N.W.2d at 443 (citations omitted).

Importantly, the Supreme Court stated, "It is not indispensable that the constitutional provision be set out or its existence alleged in the petition stating the cause of action." *Id*. "All that is necessary is that the litigant allege and prove facts constituting a cause of action because of it. . . . Therefore, it is necessary to consider both the pleadings and evidence to determine whether a cause of action for property damaged for a public use existed." *Id*. Because the district court failed to consider Kula's claim for damages in *Kula I*, the Supreme Court reversed, and remanded for further proceedings.

When the case returned on appeal following remand, the Nebraska Supreme Court observed that the case had been previously reversed and remanded "for further proceedings to consider the issue of damages under Neb. Const. art. I, § 21," and that an award was entered in Kula's favor. See *Kula II, supra*. Nance County appealed, and Kula cross-appealed. Nance County complained that the district court did not use the proper measure of damages; Kula complained that the award of damages was inadequate. The Supreme Court first pointed out that since there was nothing in the record to the contrary, "we assume in deciding this case that the order relating to the installation of the culvert eliminated future damages. Therefore, we are dealing with a situation involving temporary damage." *Id*. at 694, 424 N.W.2d at 119. The Supreme Court then stated:

Accordingly, the County's reliance on the rule relating to the measure of damages as being the difference in the market value of the land before and after the damage, where there has been no taking, cited in *Beach v. City of Fairbury*, 207 Neb. 836, 301 N.W.2d 584 (1981), refers to permanent damage and is inapplicable in this situation.

- 701 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

Where land, no part of which is taken, temporarily suffers damage compensable under Neb. Const. art. I, § 21, "'the measure of compensation is not the market value but the value of the use for the period damaged.'" [Citations omitted.] If the land is cropland, the best test of the value of its use is the value of the crops which could and would have been grown upon the land.

*Kula II*, 228 Neb. at 694-95, 424 N.W.2d at 119.

The Nebraska Supreme Court goes on to discuss factors to consider in ascertaining damages to crops, and then it also discusses how to address additional expenses incurred by reason of the County's action, such as replanting expenses and treatment of the land to eliminate chemical problems and salt caused by the ponding of water. The Supreme Court then holds that "where the land damaged can be returned to its prior condition by treatment, grading, or otherwise, the damage is temporary and the landowner is entitled to such expenses as part of his or her damages." *Kula II*, 228 Neb. at 697-98, 424 N.W.2d at 121.

In *Kula II*, because there was no evidence that the damage to the property would reoccur, it was deemed temporary, rather than permanent damage, and compensation could be awarded to return the property to its prior condition, including replanting expenses and other treatments necessary to return it to its prior condition. On the other hand, *Quest v. East Omaha Drainage Dist.*, 155 Neb. 538, 52 N.W.2d 417 (1952), stands for the proposition that when real property is not physically taken, but is *permanently* damaged, the measure of damages is based on the change in market value. *Quest* involved the excavation for public use of a lot adjacent to the plaintiff's property, which excavation materially depreciated the market value of the plaintiff's property and restricted its use. The excavation in the adjacent lot resulted in the creation of a 40-foot cliff, dust blowing up the cliff into the plaintiff's house, dust and litter blowing into the yard, wind blowing roofing and shingles off the side of the house, pools of stagnant water causing

- 702 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

mosquito problems, and swallows nesting in the cliff. And although the excavated area was fenced, children got under the fence and fires were started in the area. In that case, restoring the plaintiff's property to its prior condition before the adjacent lot was excavated was obviously not an option and thus the damage was permanent. As a result, the appropriate measure of damages was the difference in market value of the property. The Nebraska Supreme Court stated, "Where land is not taken, the measure of damages is the difference in market value before and after the damaging, taking into consideration the uses to which the land was put and for which it is reasonably suitable." *Id.* at 544, 52 N.W.2d at 421. The Supreme Court determined that the plaintiff was entitled to have the issue of damages submitted to a jury.

The circumstance in *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), seems inapplicable to the present case, because *Walkenhorst* involved the actual physical taking of land, which is not the circumstance here. Also, *Quest, supra*, seems inapplicable; even though no land was physically taken, the damage from the neighboring lot was ongoing and permanent, and therefore, restoration of the plaintiff's property to its prior condition was not an option. Thus, I conclude *Kula II, supra*, controls the measure of damages in this case, which would allow for the consideration of costs to restore the property to its prior condition. To the extent it could be applied (which cannot be determined in this dissent), *Keitges v. VanDermeulen*, 240 Neb. 580, 483 N.W.2d 137 (1992), offers guidance when considering compensatory damages for cutting, destroying, and damaging trees, specifically that the damages would include the cost of reasonable restoration of the property to its preexisting condition or a condition as close as reasonably feasible.

The majority distinguishes *Kula II* on the basis that it "was not an eminent domain case, but, rather, it involved returning the property to its prior condition, which included crop replanting and treatment to eliminate chemicals and salt on

- 703 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

the land." Although *Kula II* was not initially filed pursuant to
§ 76-705, as the Russells did here, it nevertheless similarly
involved a landowner's right to compensation under our state's
constitution when a person's property is damaged for public
use. The majority also determines that "[r]eturning the prop-
erty to its prior condition in the present case involves replac-
ing trees, some very large," and that "removal of these trees is
not temporary in the same sense as crops that are damaged."
However, just as crops can be destroyed and replanted, so can
trees; admittedly, the restoration of trees will necessarily be a
slower, less precise process. And while the restoration cannot
be exact, compensation to allow for reasonable restoration is
appropriate. The majority further states that the evidence from
the Russells' three experts did not relate to returning the prop-
erty to its prior condition. However, that evidence was deemed
"inadmissible" by the district court and was never considered
given the district court's conclusion that the measure of dam-
ages in *Walkenhorst, supra*, applied. Nevertheless, the district
court's order did acknowledge that Williams' testimony went
to the "cost of replacing the trees" and that Philips' testi-
mony went to damages "based on a reproduction/restoration
cost analysis."

"If the fact is established that property has been damaged
for public use, the owner is entitled to compensation." *Quest
v. East Omaha Drainage Dist.*, 155 Neb. 538, 544, 52 N.W.2d
417, 421 (1952). There is no question the Russells sustained
damage to their real property by the actions of a government
body for a public use purpose. In my view, the facts of this
case warrant a measure of damages appropriate for real prop-
erty not physically taken, but which has sustained temporary
damage which can be restored, at least to some degree, to its
prior condition, as described in *Kula II, supra*.

As a final note, I address the majority's exclusion of por-
tions of the supplemental transcript supplied on appeal. When
a party appeals an appraisers' award from the county court
to the district court, Neb. Rev. Stat. § 76-717 (Reissue 2018)

- 704 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
RUSSELL v. FRANKLIN COUNTY
Cite as 27 Neb. App. 684

provides that the county judge shall prepare and transmit to the clerk of the district court a duly certified transcript of "all proceedings" concerning the land at issue. While evidence of the damages assessed by appraisers in the county court proceeding is not substantive evidence in a de novo trial in the district court to determine the landowner's damages caused by eminent domain, see *Rose v. Lincoln*, 223 Neb. 148, 388 N.W.2d 127 (1986), I am not entirely clear as to why the majority sustained the County's motion to strike pages 24 to 42 of the supplemental transcript in the appeal to this court. Those pages include, for example, the "Return of Appraisers," which would appear to have been appropriately contained in a transcript of "all proceedings" as required by statute. Regardless, the inclusion or exclusion of those pages does not impact the majority's opinion, nor this dissent, in any way.